TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
MARY GRIFFIN SIMS (CSB No. 324073)
mgriffin@fenwick.com
YVETTE CHEN (CSB No. 352696)
ychen@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Attorneys for Defendant
INVOCA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUHSON BUSBY and JILL COHEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INVOCA, INC.,<br><br>Defendant. | Case No.: 4:24-cv-05542-JD<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date: December 19, 2024<br>Time: 10:00 a.m.<br>Dept: Courtroom 11, 19th Floor<br>Judge: Honorable James Donato |

## TABLE OF CONTENTS

Page

NOTICE OF MOTION .......... v

STATEMENT OF ISSUES TO BE DECIDED .......... vi

MEMORANDUM OF POINTS AND AUTHORIITES .......... 1

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 3

A. The Complaint Does Not Adequately Plead CAFA Jurisdiction. .......... 3

1. There Does Not Appear To Be Minimal Diversity. .......... 4

2. Plaintiffs Have Not Alleged Any Facts To Suggest That CAFA's Exceptions Do Not Apply. .......... 5

B. The Complaint Fails To State A Claim Under 12(b)(6). .......... 6

1. Plaintiffs' Section 631(a) Claims Fail—Count I. .......... 6

2. Plaintiffs' Section 632(a) Claims Fail—Count II. .......... 12

3. Plaintiffs' Section 637.5 Claims Fail—Count III. .......... 13

CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**


*Alonzo v. Saddle Ranch Holdings, LLC*,
No. CV 21-06630-CJC, 2021 WL 10378013 (C.D. Cal. Oct. 7, 2021) .................................. 4

*Ashoff v. City of Ukiah*,
130 F.3d 409 (9th Cir. 1997)........................................................................................ 3

*Bate v. Securly, Inc.*,
No. 23-CV-1304-AGS-DEB, 2024 WL 3928892 (S.D. Cal. Aug. 23, 2024) ...................... 3, 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................... 3

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023)........................................................................ 7

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023).......................................................................... 7

*Diva Limousine, Ltd. v. Uber Techs., Inc.*,
392 F. Supp. 3d 1074 (N.D. Cal. 2019) ........................................................................ 4

*Flanagan v. Flanagan*,
27 Cal. 4th 766, 117 Cal.Rptr.2d 574, 41 P.3d 575 (2002) ............................................. 12

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ................................................................... 7, 8, 9

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)........................................................................................ 6

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........................................................................ 11

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .................................................................... 8, 10

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)...................................................................................... 11

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ...................................................................................................... 3

*Kwan v. SanMedica Int'l*,
854 F.3d 1088 (9th Cir. 2017)........................................................................................ 3


FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
## (Continued)


**Page(s)**

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) (en banc) .......... 2

*Maghen v. Quicken Loans Inc.*,
94 F. Supp. 3d 1141 (C.D. Cal. 2015) .......... 12

*Marroquin v. Wells Fargo, LLC*,
No. 11CV163-L BLM, 2011 WL 476540, (S.D. Cal. Feb. 3, 2011) .......... 4

*Papasan v. Allain*,
478 U.S. 265 (1986) .......... 3

*Park v. Webloyalty.com, Inc.*,
No. 12-CV-1380-LAB JMA, 2013 WL 4711159 (S.D. Cal. Aug. 30, 2013) .......... 3

*Pierce v. NovaStar Mortg., Inc.*,
422 F. Supp. 2d 1230 (W.D. Wash. 2006) .......... 3

*Reyes v. Educ. Credit Mgmt. Corp.*,
773 F. App'x 989 (9th Cir. 2019) .......... 12

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 6, 7

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) .......... 7, 8

*Serrano v. 180 Connect, Inc.*,
478 F.3d 1018 (9th Cir. 2007) .......... 5

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010) .......... 3

*Tavernetti v. Superior Court*,
22 Cal. 3d 187 (Cal. 1978) .......... 6

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) .......... 6

*Williams v. What If Holdings, LLC*,
No. 22-03780-WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 8, 9

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 7, 9, 10


FENWICK & WEST LLP
ATTORNEYS AT LAW

## TABLE OF AUTHORITIES
## (Continued)


**Page(s)**

**STATUTES AND RULES**

28 U.S.C. § 1332, Class Action Fairness Act ("CAFA") ........ 1, 3, 4, 5

Cal. Pen. Code § 631 ........ 1, 6, 7, 12

Cal. Pen. Code. § 632 ........ 1, 6, 12

Cal. Pen. Code. § 637.5 ........ 1, 6, 13

California's Invasion of Privacy Act ("CIPA") ........ *passim*

Fed. R. Civ. P. 8(a) ........ 3

Fed. R. Civ. P. 12(b)(1) ........ 3

Fed. R. Civ. P. 12(b)(6) ........ 3, 11


FENWICK & WEST LLP
ATTORNEYS AT LAW

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 19, 2024, at 10:00 a.m., or thereafter as soon as available, in the courtroom of the Honorable James Donato, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant Invoca, Inc. will and hereby does move the Court for an order dismissing this action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim.

This Motion is based on this Notice of Motion; Invoca's Memorandum of Points and Authorities; any Reply that Invoca may file in support of this Motion; and any evidence and argument presented to the Court.

Dated: October 28, 2024

FENWICK & WEST LLP

By: */s/ Tyler G. Newby*
Tyler G. Newby

Attorneys for Plaintiff
Invoca, Inc.

## STATEMENT OF ISSUES TO BE DECIDED

The motion raises the following issues to be decided:

**A. Subject Matter Jurisdiction.** Whether the Court has subject matter jurisdiction under the Class Action Fairness Act.

**B. California Invasion Of Privacy Act ("CIPA") Section 631.** Whether Plaintiffs' claims under Section 631 of CIPA should be dismissed because: Plaintiffs have not sufficiently alleged that Invoca is a third party wiretapper or eavesdropper.

**C. CIPA, Section 632.** Whether Plaintiffs' claims under Section 632 of CIPA should be dismissed because Plaintiffs consented to the recording of their calls, which is fatal to a finding that they had a reasonable expectation of privacy in those calls.

**D. CIPA, Section 637.5.** Whether Plaintiffs' claims under CIPA Section 637.5 should be dismissed because: (i) the section does not apply to Invoca; (ii) even if the section did apply, Plaintiffs have not sufficiently alleged that they were at home, work, or a place of business when their calls were recorded; and (iii) Plaintiffs did not sufficiently allege that Invoca received subscriber information.

**E. Leave To Amend.** Whether the complaint should be dismissed with leave to amend.

**MEMORANDUM OF POINTS AND AUTHORIITES**

## I. INTRODUCTION

Plaintiffs Ruhson Busby and Jill Cohen are suing under California's Invasion of Privacy Act ("CIPA") for having their calls recorded, while at the same time admitting that they knew their calls were being recorded. As absurd as that statement appears on its face, Plaintiffs try to justify this action by alleging that when DirecTV and DISH network notified them that their calls were being recorded, Plaintiffs did not know that those companies were using Invoca's software to record and store the calls. Invoca provides a cloud-based communications software-as-a-service ("SaaS") that businesses use for a variety of customer support functions, including recording customer calls. Plaintiffs' misguided interpretation of CIPA, a criminal statute, would criminalize many cloud computing and software-as-a-service applications if adopted. Plaintiffs are wrong, and their complaint should be dismissed for the following reasons.

First, the complaint raises a question of whether the Court has subject matter jurisdiction. The complaint alleges jurisdiction under the Class Action Fairness Act ("CAFA"), but there appears to be no minimal diversity. Both Plaintiffs are citizens of California and seek to represent a California class, and Invoca has its principal place of business in California. The complaint is silent on the basis for CAFA jurisdiction.

Second, Plaintiffs' claims under Section 631(a) of CIPA (Count I) fails because Plaintiffs do not sufficiently allege that Invoca is a third party wiretapper or eavesdropper. Instead, the only *factual* allegations of the complaint are that Invoca records calls solely for the benefit of its customers such as DirecTV and DISH. As such, Invoca is merely an extension of DirecTV and DISH, and is exempted from CIPA Section 631(a) liability as a party to those companies' communications.

Third, Plaintiffs' claims under CIPA Section 632(a) (Count II) fare no better. Plaintiffs' Section 632 claims fail because they admittedly consented to the recording of their calls, which is fatal to a finding that they had a reasonable expectation of privacy in those calls.

Fourth, Plaintiffs' CIPA Section 637.5 claims also fail because that section applies only to cable and satellite television providers or licensees, which the complaint acknowledges, Invoca is

not. Even if the Court were to find that it somehow applies to Invoca—it does not—Plaintiffs do not sufficiently allege that they were at home, work, or a place of business when they initiated their customer service calls with DISH or DirecTV. Nor do Plaintiffs sufficiently allege that Invoca received subscriber information.

Because no amendment could cure these pleading defects, or the flawed legal theory on which they are based, the Court should dismiss the complaint with prejudice. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (district court may deny otherwise-liberally granted leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts.").

## II. STATEMENT OF FACTS

Invoca develops and operates a conversation intelligence software-as-a-service, which businesses, such as DISH and DirecTV, use to support their contact center functions. Compl. ¶ 1-2. Invoca's customers can choose from a suite of services that Invoca offers, one of which is a product that allows its customers to record calls. Compl. ¶¶ 2, 30. While the complaint summarizes Invoca's marketing literature to describe the different various services that Invoca customers *could* contract for and use (Compl. ¶¶ 25-32), the only feature the complaint plausibly alleges DirecTV and DISH *do use* is call recording. Compl. ¶¶ 7, 9-13.

Plaintiffs allege that they placed calls to DISH and DirecTV while in California in or around July 2024 and that these calls were recorded by Invoca. *Id*. Plaintiffs allege that DISH and DirecTV use Invoca as a third-party service provider to record consumers' phone conversations. *Id.* ¶ 4. Plaintiffs admit that "DISH consumers are told their calls will be 'monitored and recorded for quality assurance or training purposes'" and "DirecTV consumers are told that their calls will be "'recorded for quality assurance.'" *Id*. ¶ 7. Notwithstanding those disclosures, Plaintiffs allege that they are somehow inadequate because they do not tell consumers that Invoca is doing the recording instead of DISH or DirecTV. *See id*. Plaintiffs further allege that Invoca read, learned, and used the contents of their conversations. *Id*. ¶¶ 10, 12. The complaint alleges in conclusory fashion that Invoca has the "capability" to use recordings of customer calls for its own purposes. Compl. ¶¶ 7, 34, 40 56. Based on the above allegations, Plaintiffs claim that the recording of their

customer service calls, which they consented to be recorded, and the processing of those recordings as part of routine customer service efforts, constitute illegal wiretapping, eavesdropping, and recording.

As shown below, Plaintiffs' claims fail and should be dismissed.

## III. LEGAL STANDARD

A Federal Rule of Civil Procedure ("Rule") 12(b)(1) motion tests whether the court has subject matter jurisdiction. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "Plaintiff[] 'bears the burden of establishing subject matter jurisdiction.'" *Bate v. Securly, Inc.*, No. 23-CV-1304-AGS-DEB, 2024 WL 3928892, at *1 (S.D. Cal. Aug. 23, 2024) (quoting *Ashoff v. City of Ukiah*, 130 F.3d 409, 410 (9th Cir. 1997)). The complaint is required to include "a short and plain statement of the grounds for the court's jurisdiction ...." *Park v. Webloyalty.com, Inc.*, No. 12-CV-1380-LAB JMA, 2013 WL 4711159, at *1 (S.D. Cal. Aug. 30, 2013) (quoting Fed. R. Civ. P. 8(a)(1)). A court must dismiss a complaint under Rule 12(b)(1) if there is no subject matter jurisdiction.

Rule 12(b)(6) likewise calls for dismissal of a complaint if it lacks a cognizable legal theory or lacks sufficient facts alleged under a cognizable theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). A complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see* Fed. R. Civ. P. 8(a). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Legal conclusions are insufficient and must be supported by factual allegations. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). And "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pierce v. NovaStar Mortg., Inc.*, 422 F. Supp. 2d 1230, 1233 (W.D. Wash. 2006) (citation omitted).

## IV. ARGUMENT

### A. The Complaint Does Not Adequately Plead CAFA Jurisdiction.

Plaintiffs assert subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). Under CAFA, a district court has "'original jurisdiction of any civil action

FENWICK & WEST LLP
ATTORNEYS AT LAW

in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which' the parties satisfy, among other requirements, minimal diversity.'" *Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1082 (N.D. Cal. 2019) (dismissing complaint for lack of subject matter jurisdiction where no minimal diversity existed under CAFA). Under CAFA, "[m]inimal diversity exists where 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'" *Id.* (quoting 28 U.S.C. § 1332(d)(2)(A)); *see also Bate*, 2024 WL 3928892, at *1.

**1. There Does Not Appear To Be Minimal Diversity.**

The complaint raises questions as to whether minimal diversity exists. Plaintiffs are residents and citizens of California. Compl. ¶¶ 9, 11. Plaintiff Busby lives in San Diego, and Plaintiff Cohen lives in Chino. *Id.* Plaintiffs seek to represent a class of "all California residents who called DISH or DirecTV while in California and whose conversations were intercepted and recorded by Invoca." Compl. ¶ 42. The putative class members they seek to represent are California residents. Invoca is a Delaware corporation with its principal place of business in California. Compl. ¶ 13. Invoca is therefore a citizen of California and Delaware. 28 U.S.C. § 1331(c)(1). The complaint does not plead any facts that some members of the putative class are not California citizens, even if they are residents. Absent minimal diversity, the Court lacks subject matter jurisdiction. *See Bate*, 2024 WL 3928892 at *1 (dismissing complaint where plaintiffs, class members, and defendant were citizens of California); *Marroquin v. Wells Fargo, LLC*, No. 11CV163-L BLM, 2011 WL 476540, at *2 (S.D. Cal. Feb. 3, 2011) (same). Without the requisite minimal diversity under CAFA, the Court should dismiss this action for lack of subject matter jurisdiction. *See e.g.*, *Bate,* 2024 WL 3928892, at *1 (granting motion to dismiss where plaintiffs, class members, and defendant were citizens of California); *Alonzo v. Saddle Ranch Holdings, LLC*, No. CV 21-06630-CJC (JCx), 2021 WL 10378013, at *4 (C.D. Cal. Oct. 7, 2021) (same).

**2. Plaintiffs Have Not Alleged Any Facts To Suggest That CAFA's Exceptions Do Not Apply.**

Under CAFA's home-state controversy exception, "[a] district court shall decline to exercise jurisdiction" where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). And under CAFA's local controversy exception, a "'district court shall decline to exercise jurisdiction' over a class action in which the plaintiff class and at least one defendant meet certain characteristics that essentially make the case a local controversy." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022 (9th Cir. 2007). This applies where:

> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (II) at least 1 defendant is a defendant—
>
> > (aa) from whom significant relief is sought by members of the plaintiff class;
> >
> > (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> >
> > (cc) who is a citizen of the State in which the action was originally filed; and
>
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> > (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(d)(4)(A).

Plaintiffs have not alleged any facts to suggest that these exceptions do not apply. The allegations in the complaint suggest that both exceptions would apply. Plaintiffs seek to represent a class of "all California residents who called DISH or DirecTV while in California and whose conversations were intercepted and recorded by Invoca." Compl. ¶ 42. Plaintiffs further allege

that "[t]he number of persons within the Class are believed to amount to thousands, if not millions of persons." *Id.* ¶ 45. On its face, it is likely that at least two-thirds of the members of the proposed class are California citizens. Invoca, the only defendant, is also a California citizen. And because this case was filed in California, the home-state controversy applies.

For similar reasons, the local controversy exception would also seem to apply. Plaintiffs' alleged injuries result from alleged conduct that occurred in California. *See* Compl. ¶¶ 9, 11. And there are no other class actions pending against Invoca asserting similar allegations. As pleaded, this action seems to fall squarely within the local controversy exception.

**B. The Complaint Fails To State A Claim Under 12(b)(6).**

Plaintiffs assert three violations of CIPA—one under Section 631, one under Section 632, and another under Section 637.5. Plaintiffs fail to state a claim for violation of any of these sections.

**1. Plaintiffs' Section 631(a) Claims Fail—Count I.**

CIPA Section 631(a) contains three operative clauses covering "three distinct and mutually independent patterns of conduct": (1) "intentional wiretapping," (2) "[willfully] attempting to learn the contents or meaning of a communication in transit over a wire," and (3) "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (Cal. 1978). Plaintiffs bring their claims under the first and second prongs. Compl. ¶¶ 57-58. Plaintiffs fail to state a claim under CIPA Section 631(a) because the complaint fails to allege that Invoca is a third party that makes independent use of recorded calls rather than an extension of DISH and DirecTV.

Section 631(a) exempts parties to a communication from liability for the self-evident reason that no person can intercept communications to which they are a party. *See In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 607 (9th Cir. 2020); *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) ("[S]ection 631 . . . has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation."). Thus, the central question the complaint raises is whether Invoca, as a provider of call recording software, is merely an extension of DISH and DirecTV, which Plaintiffs allege are parties to communications with Plaintiffs, or whether it is a third-party eavesdropper. This distinction arises from two seminal cases: *Ribas v. Clark*,

38 Cal. 3d 355, 359 (1985) and *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975). Comparing these decisions is instructive. In *Rogers*, the defendant secretly tape recorded a conversation with the plaintiff. 52 Cal. App. 3d at 897. The court found that because the defendant was a party to the conversation, he did not violate Section 631(a). *Id.* The court further explained that "eavesdrop" means "'to listen secretly to what is said in private.' It is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation." *Id.* In contrast, in *Ribas* the defendant "listened in on an extension telephone to a conversation between plaintiff and his former wife" without the plaintiff's knowledge. 38 Cal. 3d 355, 358 (1985). Finding that this conduct stated a claim for eavesdropping, the Court observed that "a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Id.* at 360-61. Thus, California courts have analyzed whether a service provider's actions are analogous to a participant in a conversation using a tape recorder, as in *Rogers*, or if they are more akin to allowing a third-party to secretly listen in on a conversation in real time, as in *Ribas*.

Courts in the Ninth Circuit are divided on the test for determining whether providers of technology used by a party to record or process a communication are merely extensions of the party to the communication or are instead third-party eavesdroppers. Some courts have held that service providers of recording technology are mere extensions of the party to the communication when the service provider solely records or processes the communication for the party. *See, e.g., Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (no CIPA wiretapping where third party communication software provider accessed and used the records for the purpose of furnishing service to party to the conversation); *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) (dismissing CIPA Section 631(a) claim where the complaint failed to plead facts that service providers recorded "Defendant's customers' information for some use or potential future use beyond simply supplying this information back to Defendant"); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (same); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021) (reasoning that "a vendor that provides a [] service" allowing a website operator



FENWICK & WEST LLP ATTORNEYS AT LAW

"to analyze its own data" is not a third-party wiretapper); *Williams v. What If Holdings, LLC*, No. 22-03780-WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (finding that third-party website screen recording service was merely a tool used by the website operator to record its own communications with the plaintiff). Other courts have taken a broader view, finding that a service provider is a third party if it has the "capability" to use customer data "for any other purpose." *See, e.g., Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023).

Invoca submits that the better test is one that looks to whether the complaint plausibly alleges that the service provider *records* the communications for its own purposes or uses the communications independent of providing a service to the party to the communication. That is, if the complaint does not allege facts raising a plausible inference that the service provider records the communications for its own purposes *other* than providing a call recording service to its customer, then the service provider is merely an extension of the customer, much like the mechanical tape recorder in *Rogers*. Judge Alsup's opinion in *Williams*, 2022 WL 17869275, at *3, which dismissed a claim that the defendant's use of third-party software to record the plaintiff's visit to the defendant's website violated CIPA, is instructive. The court explained that the relevant question was whether the complaint adequately alleged the service provider "was an independent third party hired to eavesdrop on What If's communications, or whether [the third party] was merely a tool [] used to record its own communications with plaintiff." *Id.* The court found plaintiff's "limited allegations" that the defendant "deployed []recording software only on [the defendant's] website" and that the recordings "were stored and accessed on [the defendant's] servers" did not sufficiently allege the service provider did anything other than provide a recording service to the defendant website operator. *Id.* The court reached this conclusion because the complaint lacked any factual allegations that the service provider used the data itself and failed to state if, and how, the service provider "affirmatively engages with [the] data in any way other than to store it." *Id.*

*Graham* reached a similar outcome. There, the defendant used software-as-a-service to record its website visitors' interactions with its site. The court dismissed the plaintiff's CIPA claim because the service was only a "vendor" that "provide[d] a tool ... that allow[ed] [a client] to record and analyze its own data." *Graham*, 533 F. Supp. 3d at 832-33. As in *Williams*, because the

FENWICK & WEST LLP
ATTORNEYS AT LAW

complaint did not allege the vendor made independent use of the recorded information, it was a mere extension of the website operator. *Id.*

On the other hand, *Javier's* test, which would hold that any service provider that has the "capability" to use recordings for its own purposes would criminalize broad swaths of cloud computing services that businesses rely on to provide services to and communicate with their customers, such as website hosting, email communications, chat communication and data storage. By this standard, a cloud computing service provider that stores the photos that users of a photo sharing and storage service send through and store on the service would potentially be an eavesdropper. Indeed, it is hard to think of *any* software-as-a-service or cloud computing service that would not be an eavesdropper under *Javier's* "capability" test.

Plaintiffs have not alleged any facts supporting a plausible inference that Invoca recorded customer service calls for any purpose other than for DirecTV and DISH's own use. To the extent the scant allegations reflect anything, they show that Invoca is a service provider that provides a customer service tool to DISH and DirecTV. Plaintiffs admit that DISH and DirecTV partner with Invoca and use Invoca's services to optimize their consumers' buying journeys. Compl. ¶ 1. Plaintiffs alleged that Invoca "recorded and transcribed [Plaintiffs' conversation[s] in real time" and analyzed them "before [they were] provided to any entity that was a party to the conversation (like DISH or DirecTV)." *Id.* ¶¶ 10, 12 33. These allegations are similar to the allegations in *Yockey,* 688 F. Supp. 3d at 973. In *Yockey*, the court found that allegations that Salesforce, a third-party software provider, ran the chat function, could view transcripts in real time, and would analyze the customer-support agent interactions in real time to create live chat transcripts did not support "a reasonable inference that Salesforce has the capability to use these communications for any purpose other than furnishing them to Kaiser." *Id.* Thus, Invoca was merely operating as a tool for DISH and DirecTV to communicate with their own customers. *Williams*, 2022 WL 17869275, at *3 (distinguishing between vendors that use client data for separate business purposes versus those that use it solely in their capacity as a service provider); *see also Graham*, 533 F. Supp. 3d at 832-33 ("Unlike NaviStone's and Facebook's aggregation of data for resale, there are no

FENWICK & WEST LLP
ATTORNEYS AT LAW

allegations here that FullStory intercepted and used the data itself."); *Yockey,* 688 F. Supp. 3d at 973 (granting motion to dismiss).

Even if the Court were to apply the *Javier* "capability" standard, the complaint does not satisfy it. While the complaint incants the word "capability" four times, it does so in only a conclusory fashion. The *only* Invoca service the complaint alleges any facts supporting a plausible inference that DirecTV or DISH use is call recording, because it alleges those customers provided notices that consumers calls may be recorded. Compl. ¶ 7. The complaint is otherwise devoid of *any* factual allegations to support an inference that either customer uses Invoca's other services or that Invoca can use the recordings for its own purposes that are independent of servicing its customers. To the contrary, throughout the complaint, Plaintiffs allege that Invoca can provide various services from customer communications for its customers' use. *See, e.g.,* Compl. ¶ 5 ("Invoca needs access to this data *to provide the Services' features* (including, inter alia, call recording, call transcription, and analysis thereof) described infra") (emphasis added); ¶ 26 ("Signal AI Studio is '[p]owered by patented machine learning' *and allows Invoca clients to* 'create AI models trained on [their] business's calls that capture the intent, product/service interest, and conversion outcome of every conversation'") (emphasis added); ¶ 28 (Automated Quality Assurance "*allows Invoca clients to* '[e]valuate 100% of inbound calls [m]ov[ing] from manually scoring a fraction of customer interactions to automatically scoring all of them[ and] … the entire call'") (emphasis added); ¶ 29 (Signal AI Discovery "*allows Invoca clients* to '[l]earn new and unexpected insights from thousands of calls at once'") (emphasis added). All of these allegations speak to the capabilities of how Invoca's customers can use Invoca's software to process recorded calls, not capabilities that Invoca can use for its own purposes.

Plaintiffs' reliance on Invoca's online Terms of Service (the "Terms") to argue that Invoca is capable of using their recorded calls for Invoca's own purposes is both conclusory and wrong. First, the complaint nowhere alleges that DirecTV or DISH agreed to Invoca's online Terms, rather than negotiating agreements for their uses. Second, the complaint misleadingly partially quotes the Terms, alleging that the "Terms of Service also allow Invoca to use the recorded information 'to

optimize and improve Services or otherwise operate Invoca's business.'" Compl. ¶ 39. The Terms include no such provision. Instead, this permission applies to "Usage Data," which the Terms define as "data regarding web applications utilized in connection with the Service, configurations, log data, and the performance results for the Service." *See* Declaration of Tyler Newby, Ex. A (https://www.invoca.com/dt-terms-of-service, ¶ d.c.).[1] "Usage Data" does not include call recordings. The complaint's partial quote of a passage from the Terms that customers give Invoca a license to use "Client Data, as reasonably necessary for Invoca to provide and enhance [i.e., improve] its provision of Services" is equally misleading. Compl. ¶ 38. First, the term "improve" does not appear in the actual Terms. Second, the complaint omits statements in the same provision that "Client owns its Client Data" and "Invoca acquires no right, title or interest from Client or Client's Agents and/or Users under this Agreement in or to any Client Data." Newby Decl. Ex. A, ¶ d.a. With this complete context, it is clear that Invoca's limited license to a Client's Data is to provide and enhance the services *to that customer*, not for Invoca's own purposes.

The complaint's selective quotations from Invoca's privacy policy are also misleading. Plaintiffs allege that the Privacy Policy includes "'[i]nformation about your calls to us, including phone numbers and recordings'" in the definition of "Personal Data," and that the policy discloses a broad range of uses of that data. But the Privacy Policy makes clear that "your calls to us, including phone numbers and recordings" refers to "when you interact with our website or call us," *not* when Invoca records a call to an Invoca customer. *See* Newby Decl. Ex. B (https://www.invoca.com/privacy-policy at "Categories of information collected from consumers"). The Privacy Policy distinguishes calls made directly to Invoca from "Categories of information collected from or on behalf of our Clients," which "may include the content of recorded telephone calls." *See* Newby Decl. Ex. B. For those recordings, which are the subject of the

---

[1] The Court may take judicial notice of the Terms, which the complaint incorporates by reference by extensively quoting from them. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003-05 (9th Cir. 2018) (affirming district court's incorporation by reference of documents referred to extensively in the complaint and explaining that a court generally "may assume an incorporated document's contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 813 (N.D. Cal. 2020) (incorporating by reference defendant's terms of service and privacy policy).

FENWICK & WEST LLP
ATTORNEYS AT LAW

complaint, the Privacy Policy makes clear that "[o]ur clients control this Personal Data and its collection and use are governed by their respective privacy policies, which may differ from Invoca's policy." *Id.*

Accordingly, under any standard, the complaint fails to state a claim under CIPA Section 631(a). Invoca requests that the Court dismiss Plaintiffs' Section 631 claim with prejudice.

**2. Plaintiffs' Section 632(a) Claims Fail—Count II.**

CIPA Section 632 prohibits the intentional use of any "electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication." Cal. Pen. Code. § 632(a). The party "bringing a CIPA claim has the burden to prove that the defendant lacked consent to record." *Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019). Plaintiffs fail to plead both absence of consent and that they had an expectation of privacy in their calls to DISH and DirecTV.

It is beyond dispute that both Plaintiffs gave express consent for their calls to be recorded. Plaintiffs allege that they called DISH and DirecTV customer service phone numbers. ¶¶ 9, 11. They also allege that "DISH consumers are told that their calls will be 'monitored and recorded for quality assurance or training purposes." *Id.* ¶ 7. Similarly, Plaintiffs also allege that DirecTV consumers "are told that their calls will be 'recorded for quality assurance.'" *Id.* Thus, Plaintiffs do not dispute, nor could they, that they were aware that their phone calls were being recorded when they called DISH and DirecTV. By continuing with the call after hearing the message, Plaintiffs consented to the recording of their calls with DISH and DirecTV. *See Maghen v. Quicken Loans Inc.*, 94 F. Supp. 3d 1141, 1147 (C.D. Cal. 2015) (no CIPA violation where recording of call was announced during the call). Plaintiffs' consent to the recording of their calls is fatal to their claim that those calls were confidential. *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77, 117 Cal.Rptr.2d 574, 41 P.3d 575 (2002) ("[A] conversation is confidential under Section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded."). Plaintiffs' consent to their call being recorded forecloses their CIPA Section 632 claims, which should be dismissed with prejudice.

### 3. Plaintiffs' Section 637.5 Claims Fail—Count III.

CIPA Section 637.5 prohibits a person "who owns, controls, operates, or manages a satellite or cable television corporation, or who leases channels on a satellite or cable system," from using "any electronic device to record, transmit, or observe any events or listen to, record, or monitor any conversations that take place inside a subscriber's residence, workplace, or place of business, without obtaining the express written consent of the subscriber." Cal. Pen. Code. § 637.5(a)(1). "Any person receiving subscriber information from a satellite or cable television corporation shall be subject to the provisions of this section." Cal. Pen. Code. § 637.5(h).

CIPA Section 637.5 does not apply to Invoca because, as the complaint does not allege that Invoca owns, controls, operates, or manages a satellite or cable company. Even if that section were to apply to DISH or DirecTV, Plaintiffs allege that Invoca is a separate and distinct entity from those companies. *See* Compl. ¶ 33. The complaint also does not allege that Plaintiffs' calls were recorded while they were in their homes, workplaces, or places of businesses. Rather, Plaintiffs simply allege that they were in California when they called DISH and DirecTV. *See id.* ¶¶ 9, 11. Additionally, the complaint lacks any factual allegations to support Plaintiffs' claim that Invoca received their "subscriber information." Rather, Plaintiffs allege in a conclusory fashion that "Invoca received subscriber information from DISH and DirecTV—including Plaintiffs' subscriber information" without identifying what information they provided. *Id.* ¶ 79. At best, Plaintiffs simply recite the elements of CIPA causes of action but fail to allege any facts suggesting that Invoca violated Section 637.5.

Accordingly, the Section 637.5 claim should be dismissed with prejudice.

///

///

///

## CONCLUSION

For the foregoing reasons, Invoca respectfully requests that the Court dismiss the complaint with prejudice.

Dated: October 28, 2024

FENWICK & WEST LLP

By: */s/ Tyler G. Newby*
Tyler G. Newby

Attorneys for Plaintiff
Invoca, Inc.