TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
MARY GRIFFIN SIMS (CSB No. 324073)
mgriffin@fenwick.com
YVETTE CHEN (CSB No. 352696)
ychen@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Attorneys for Defendant
INVOCA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RUHSON BUSBY, JILL COHEN, and STEPHEN CASNER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

INVOCA, INC.,

Defendant.

Case No.: 4:24-cv-05542-JD

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date: January 16, 2025
Time: 10:00 a.m.
Dept: Courtroom 11, 19th Floor
Judge: Honorable James Donato

## TABLE OF CONTENTS

Page

NOTICE OF MOTION ..... v

STATEMENT OF ISSUES TO BE DECIDED ..... vi

MEMORANDUM OF POINTS AND AUTHORIITES ..... 1

- I. INTRODUCTION ..... 1
- II. STATEMENT OF FACTS ..... 2
- III. LEGAL STANDARD ..... 3
  - A. Motion to Dismiss. ..... 3
  - B. Motion to Strike. ..... 4
- IV. ARGUMENT ..... 4
  - A. The Complaint Fails To State A Claim Under 12(b)(6). ..... 4
    - 1. Plaintiffs' Section 631(a) Claims Fail—Count I. ..... 4
    - 2. Plaintiffs' Section 632(a) Claims Fail—Count II. ..... 10
    - 3. Plaintiffs' Section 637.5 Claims Fail—Count III. ..... 11
    - 4. Plaintiff Casner's CIPA Claims Fail For Additional Reasons. ..... 11
    - 5. Plaintiff Casner's Pennsylvania WESCA Claim Fails – Count IV. ..... 12
  - B. Plaintiffs' Nationwide CIPA Claims Should Be Stricken Under 12(f), Or In The Alternative Dismissed Under 12(b)(6). ..... 13
    - 1. The Court Should Strike the Nationwide CIPA Class Claims. ..... 13
    - 2. The Court Should Dismiss Casner's CIPA Claims Because They Do Not Allege A Sufficient California Nexus. ..... 15

CONCLUSION ..... 15

FENWICK & WEST LLP
ATTORNEYS AT LAW

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004)....................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3, 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................3

*Benavidez v. Cty. of San Diego*,
993 F.3d 1134 (9th Cir. 2021)....................4

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
No. 14-00751, 2016 WL 3543699 (S.D. Cal. June 29, 2016)....................15

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023)....................6

*Carrese v. Yes Online Inc.*,
No. 16-05301, 2016 WL 6069198 (C.D. Cal. Oct. 13, 2016)....................15

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023)....................6

*Commonwealth v. Brion*,
539 Pa. 256 (1994)....................12, 13

*Commonwealth v. Byrd*,
661 Pa. 85 (2020)....................13

*Cover v. Windsor Surry Co.*,
No.14-05262, 2016 WL 520991 (N.D. Cal. Feb. 10, 2016)....................14

*Davison v. Kia Motors Am., Inc.*,
No. 15-00239, 2015 WL 3970502 (C.D. Cal. June 29, 2015)....................14

*Erceg v. LendingClub Corporation*,
475 F. Supp. 3d 1071 (N.D. Cal. 2020)....................12, 14

*Flanagan v. Flanagan*,
27 Cal. 4th 766, 117 Cal.Rptr.2d 574, 41 P.3d 575 (2002)....................10

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)....................6, 7, 8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....................4

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 9

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) .......... 12, 14

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 6, 8

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 9

*Kwan v. SanMedica Int'l*,
854 F.3d 1088 (9th Cir. 2017) .......... 4

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003) .......... 3

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) (en banc) .......... 2

*Maghen v. Quicken Loans Inc.*,
94 F. Supp. 3d 1141 (C.D. Cal. 2015) .......... 10

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .......... 3

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .......... 13, 14

*Olean Wholesale Grocery Corp. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) .......... 13

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3rd Cir. 2022) .......... 12

*Reyes v. Educ. Credit Mgmt. Corp.*,
773 F. App'x 989 (9th Cir. 2019) .......... 10

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 5

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) .......... 5, 6

*Ruegsegger v. Caliber Home Loans*,
No. 17-0907, 2019 WL 8163640 (C.D. Cal. Jan. 8, 2019) .......... 4

*Tavernetti v. Superior Court*,
22 Cal. 3d 187 (Cal. 1978) .......... 4

## TABLE OF AUTHORITIES
## (Continued)


**Page(s)**

*Valentine v. NebuAd, Inc.*,
804 F. Supp. 2d 1022 (N.D. Cal. 2011) .................................................................... 15

*Vinci v. Hyundai Motor Am.*,
No. 17-0997, 2018 WL 6136828 (C.D. Cal. Apr. 10, 2018) ................................................ 14

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979)................................................................................................ 4

*Williams v. What If Holdings, LLC*,
No. 22-03780-WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)............................ 6, 7, 8

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .............................................................. 5, 7, 8

**Statutes and Rules**

18 Pa. C.S. § 5702........................................................................................................... 12

18 Pa. C.S. § 5703........................................................................................................... 12

Cal. Pen. Code § 631 ............................................................................................... *passim*

Cal. Pen. Code. § 632........................................................................................ 1, 4, 10, 11

Cal. Pen. Code. § 637.5.............................................................................................. 1, 4, 11

Cal. Pen. Code. § 637.5(h) .............................................................................................. 11

California's Invasion of Privacy Act ........................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)................................................................................................. 3, 9

Fed. R. Civ. P. 12(f) ......................................................................................................... 4

Pennsylvania’s Wiretapping and Electronic Surveillance Control Act ................................ *passim*

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 16, 2025, at 10:00 a.m., or thereafter as soon as available, in the courtroom of the Honorable James Donato, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant Invoca, Inc. will and hereby does move the Court for an order dismissing this action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and an order striking the nationwide class and allegations under Federal Rule of Civil Procedure 12(f).

This Motion is based on this Notice of Motion; Invoca's Memorandum of Points and Authorities; Declaration of Tyler G. Newby; any Reply that Invoca may file in support of this Motion; and any evidence and argument presented to the Court.

Dated: November 26, 2024

FENWICK & WEST LLP

By: */s/ Tyler G. Newby*
Tyler G. Newby

Attorneys for Defendant
Invoca, Inc.

## STATEMENT OF ISSUES TO BE DECIDED

The motion raises the following issues to be decided:

**A. California Invasion Of Privacy Act ("CIPA") Section 631.** Whether Plaintiffs' claims under Section 631 of CIPA should be dismissed because Plaintiffs have not sufficiently alleged that Invoca is a third party wiretapper or eavesdropper.

**B. CIPA, Section 632.** Whether Plaintiffs' claims under Section 632 of CIPA should be dismissed because Plaintiffs consented to the recording of their calls, which is fatal to a finding that they had a reasonable expectation of privacy in those calls.

**C. CIPA, Section 637.5.** Whether Plaintiffs' claims under CIPA Section 637.5 should be dismissed because: (i) the section does not apply to Invoca; (ii) even if the section did apply, Plaintiffs have not sufficiently alleged that they were at home, work, or a place of business when their calls were recorded; and (iii) Plaintiffs did not sufficiently allege that Invoca received subscriber information.

**D. Plaintiff Casner's CIPA Claim.** Whether Plaintiff's Casner's CIPA claims should be dismissed because he is a Pennsylvania citizen asserting both a Pennsylvania WESCA claim and California CIPA claim based on the same alleged conduct.

**E. WESCA, Section 5703 Claim.** Whether Plaintiff Casner's WESCA claim under Section 5703 should be dismissed because Plaintiff consented to the recording of his call, which is fatal to a finding that he had a reasonable expectation of privacy in that call.

**F. Nationwide CIPA Claims.** Whether Plaintiffs' nationwide CIPA claim should be stricken based on choice-of-law principles.

**G. Non-California Resident CIPA Claims.** Whether Non-California residents' CIPA claims should be dismissed because they do not allege where their calls were recorded, intercepted, or analyzed.

**H. Leave To Amend.** Whether the complaint should be dismissed without leave to amend.

## MEMORANDUM OF POINTS AND AUTHORIITES

## I. INTRODUCTION

Plaintiffs Ruhson Busby, Jill Cohen, and Stephen Casner are suing under California's Invasion of Privacy Act ("CIPA") for having their calls recorded, while at the same time admitting that they knew their calls were being recorded. As absurd as that statement appears on its face, Plaintiffs go even further, asserting both a nationwide CIPA claim, as well as a California class CIPA claim, while also asserting a separate claim under Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA") based on the same alleged conduct. Plaintiffs try to justify this action by alleging that when DirecTV and DISH network notified them that their calls were being recorded, Plaintiffs did not know that those companies were using Invoca's software to record and store the calls. Invoca provides a cloud-based communications software-as-a-service ("SaaS") that businesses use for a variety of customer support functions, including recording customer calls. Plaintiffs' misguided interpretations of CIPA and WESCA, both criminal statutes, would criminalize many cloud computing and software-as-a-service applications if adopted. Plaintiffs are wrong, and their amended complaint should be dismissed for the following reasons.

First, Plaintiffs' claims under Section 631(a) of CIPA (Count I) fail because Plaintiffs do not sufficiently allege that Invoca is a third party wiretapper or eavesdropper. Instead, the only *factual* allegations of the amended complaint are that Invoca records calls solely for the benefit of its customers such as DirecTV and DISH. As such, Invoca is merely an extension of DirecTV and DISH, and is exempted from CIPA Section 631(a) liability as a party to those companies' communications. Second, Plaintiffs' claims under Section 632(a) of CIPA (Count II) fare no better. Plaintiffs' Section 632 claims fail because they admittedly consented to the recording of their calls, which is fatal to a finding that they had a reasonable expectation of privacy in those calls. Third, Plaintiffs' CIPA Section 637.5 claims also fail because that section applies only to cable and satellite television providers or licensees, which the complaint acknowledges, Invoca is not. Even if the Court were to find that Section 637.5 somehow applies to Invoca—it does not—Plaintiffs do not sufficiently allege that they were at home, work, or a place of business when they initiated their customer service calls with DISH or DirecTV. Nor do Plaintiffs sufficiently allege that Invoca

FENWICK & WEST LLP
ATTORNEYS AT LAW

received subscriber information. Fourth, Plaintiff Casner's CIPA claims fail for the additional reason that he cannot assert both a Pennsylvania WESCA claim and a California CIPA, as a purported member of a nationwide class, based on the same alleged conduct. Fifth, Plaintiff Casner's WESCA claim fails because he consented to the recording of his call, which is fatal to a finding that he had a reasonable expectation of privacy in his call. Sixth, Plaintiffs' nationwide CIPA claims should be stricken because choice-of-law principles preclude Plaintiffs' nationwide CIPA claims. Finally, Non-California Residents' CIPA claims fail because Plaintiffs do not allege their calls were recorded or analyzed in California, and as such, have no basis to make such an allegation.

Because no amendment could cure these pleading defects, or the flawed legal theory on which they are based, the Court should dismiss the amended complaint with prejudice. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

## II. STATEMENT OF FACTS

Invoca develops and operates a conversation intelligence software-as-a-service, which businesses, such as DISH and DirecTV, use to support their contact center functions. Amended Complaint ("Am. Compl.") ECF 21 at ¶¶ 1-2. Invoca's customers can choose from a suite of services that Invoca offers, one of which is a product that allows its customers to record calls. *Id.* at ¶¶ 1-2, 39. While the complaint summarizes Invoca's marketing literature to describe the different services that Invoca customers *could* contract for and use (*id.* at ¶¶ 34-41), the only feature the complaint plausibly alleges DirecTV and DISH *do use* is call recording. *Id.* at ¶¶ 7, 10-18.

Plaintiffs Busby and Cohen allege that they placed calls to DISH and DirecTV while in California in or around July 2024 and that these calls were recorded by Invoca. *Id.* ¶¶ 10-14. Plaintiff Casner alleges that he called DirecTV's customer service line while in Pennsylvania on or around September 5, 2024. *Id.* ¶ 15. Plaintiffs allege that DISH and DirecTV use Invoca as a third-party service provider to record consumers' phone conversations. *Id.* ¶ 4. Plaintiffs admit that "DISH consumers are told their calls will be 'monitored and recorded for quality assurance or training purposes'" and "DirecTV consumers are told that their calls will be 'recorded for quality assurance.'" *Id.* ¶ 7. Notwithstanding those disclosures, Plaintiffs allege that they are somehow

inadequate because they do not tell consumers that Invoca is doing the recording instead of DISH or DirecTV. *See id*. Plaintiffs further allege that Invoca read, learned, and used the contents of their conversations when its software "recorded and transcribed [Plaintiffs'] conversation in real time, and performed AI analysis thereon." *Id*. ¶¶ 11, 13, 16. The amended complaint does not allege *where,* presumably in the cloud, these recordings, transcriptions, and analyses take place. The complaint alleges in conclusory fashion that Invoca has the "capability to use" recordings of customer calls "for [its own] purposes." *Id*. ¶¶ 7, 43, 66; *see* ¶ 49 (similar). Based on the above allegations, Plaintiffs claim that the recording of their customer service calls, which they consented to be recorded, and the processing of those recordings as part of routine customer service efforts, constitute illegal wiretapping, eavesdropping, and recording.

As shown below, Plaintiffs' claims fail and should be dismissed.

## III. LEGAL STANDARD

### A. Motion to Dismiss.

The Rule 12 standards are well-known and well-established. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleading facts that are "'merely consistent with' a defendant's liability" is not enough. *Iqbal*, 556 U.S. at 678. To represent a class, of course, Plaintiffs first must have viable claims of their own. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (if plaintiff has no claim "she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail").

Although the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted), "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Legal conclusions are insufficient and "must be supported by

FENWICK & WEST LLP
ATTORNEYS AT LAW

factual allegations[,]" *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 662), and "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss," *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (quoting *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)).

**B. Motion to Strike.**

Rule 12(f) allows the Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A "court may strike class allegations if the complaint plainly reflects that a class action cannot be maintained." *Id.*; *see Ruegsegger v. Caliber Home Loans*, No. 17-0907, 2019 WL 8163640, at *6 (C.D. Cal. Jan. 8, 2019) (recognizing that courts in the Ninth Circuit have stricken class allegations when it is clear from the pleadings that the proposed class could not be certified).

## IV. ARGUMENT

### A. The Complaint Fails To State A Claim Under 12(b)(6).

Plaintiffs assert three violations of CIPA—one under Section 631, one under Section 632, and another under Section 637.5, and a violation under Section 5701 of Pennsylvania's WESCA. Plaintiffs fail to state a claim for violation of any of these sections.

#### 1. Plaintiffs' Section 631(a) Claims Fail—Count I.

CIPA Section 631(a) contains three operative clauses covering "three distinct and mutually independent patterns of conduct": (1) "intentional wiretapping," (2) "[willfully] attempting to learn the contents or meaning of a communication in transit over a wire," and (3) "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (Cal. 1978). Plaintiffs bring their claims under the first and second prongs. Am. Compl. ¶¶ 67-68. Plaintiffs fail to state a claim under CIPA Section 631(a) because the complaint fails to allege that Invoca is a third party that makes independent use of recorded calls rather than an extension of DISH and DirecTV.

Section 631(a) exempts parties to a communication from liability for the self-evident reason that no person can intercept communications to which they are a party. *See In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 607 (9th Cir. 2020)*; see also Warden v. Kahn*, 99 Cal. App.

FENWICK & WEST LLP
ATTORNEYS AT LAW

3d 805, 811 (1979) ("[S]ection 631 . . . has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation."). Thus, the central question the complaint raises is whether Invoca, as a provider of call recording software, is merely an extension of DISH and DirecTV, which Plaintiffs allege are parties to communications with Plaintiffs, or whether it is a third-party eavesdropper. This distinction arises from two seminal cases: *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985) and *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975). Comparing these decisions is instructive. In *Rogers*, the defendant secretly tape recorded a conversation with the plaintiff. *Rogers,* 52 Cal. App. 3d at 897. The court found that because the defendant was a party to the conversation, he did not violate Section 631(a). *Id.* at 898-899. The court further explained that "eavesdrop" means "'to listen secretly to what is said in private.' It is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation." *Id.* at 899. In contrast, in *Ribas* the defendant "listen[ed] in on an extension telephone" to a conversation between plaintiff and his former wife" without the plaintiff's knowledge. *Ribas,* 38 Cal. 3d 355, 358. Finding that this conduct stated a claim for eavesdropping, the Court observed that "a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Id.* at 360-61. Thus, California courts have analyzed whether a service provider's actions are analogous to a participant in a conversation using a tape recorder, as in *Rogers*, or if they are more akin to allowing a third-party to secretly listen in on a conversation in real time, as in *Ribas*.

Courts in the Ninth Circuit are divided on the test for determining whether providers of technology used by a party to record or process a communication are merely extensions of the party to the communication or are instead third-party eavesdroppers. Some courts have held that service providers of recording technology are mere extensions of the party to the communication when the service provider solely records or processes the communication for the party. *See, e.g., Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (no CIPA wiretapping where third party communication software provider accessed and used the records for the purpose of furnishing

FENWICK & WEST LLP
ATTORNEYS AT LAW

service to party to the conversation); *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) (dismissing CIPA Section 631(a) claim where the complaint failed to plead facts that service providers recorded "Defendant's customers' information for some use or potential future use beyond simply supplying this information back to Defendant"); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (similar); *Graham v. Noom, Inc*., 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021) (reasoning that "a vendor that provides a [] service" allowing a website operator "to record and analyze its own data" is not a third-party wiretapper); *Williams v. What If Holdings, LLC*, No. 22-03780-WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (finding that third-party website screen recording service was merely a tool used by the website operator to record its own communications with the plaintiff). Other courts have taken a broader view, finding that a service provider is a third party if it has the "capability" to use customer data "for any other purpose." *See Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023).

Invoca submits that the better test is one that looks to whether the complaint plausibly alleges that the service provider *records* the communications for its own purposes or uses the communications independent of providing a service to the party to the communication. That is, if the complaint does not allege facts raising a plausible inference that the service provider records the communications for its own purposes *other* than providing a call recording service to its customer, then the service provider is merely an extension of the customer, much like the mechanical tape recorder in *Rogers*. Judge Alsup's opinion in *Williams*, 2022 WL 17869275, at *3, which dismissed a claim that the defendant's use of third-party software to record the plaintiff's visit to the defendant's website violated CIPA, is instructive. The court explained that the relevant question was whether the complaint adequately alleged the service provider "was an independent third party hired to eavesdrop on What If's communications, or whether [the third party] was merely a tool [] used to record its own communications with plaintiff." *Id.* The court found plaintiff's "limited allegations" that the defendant "deployed [] recording software only on [the defendant's] website" and that the recordings "were stored and accessed on [the defendant's] servers" did not sufficiently allege the service provider did anything other than provide a recording service to the defendant website operator. *Id.* The court reached this conclusion because the complaint lacked

FENWICK & WEST LLP
ATTORNEYS AT LAW

any factual allegations that the service provider used the data itself and failed to state if, and how, the service provider "affirmatively engages with [the] data in any way other than to store it." *Id.*

*Graham* reached a similar outcome. There, the defendant used software-as-a-service to record its website visitors' interactions with its site. The court dismissed the plaintiff's CIPA claim because the service was only a "vendor" that "provide[d] a tool ... that allow[ed] [a client] to record and analyze its own data." *Graham*, 533 F. Supp. 3d at 832-33. As in *Williams*, because the complaint did not allege the vendor made independent use of the recorded information, it was a mere extension of the website operator. *Id.*

On the other hand, *Javier's* test, which would hold that any service provider that has the "capability" to use recordings for its own purposes would criminalize broad swaths of cloud computing services that businesses rely on to provide services to and communicate with their customers, such as website hosting, email communications, chat communication and data storage. By this standard, a cloud computing service provider that stores the photos that users of a photo sharing and storage service send through and store on the service would potentially be an eavesdropper. Indeed, it is hard to think of *any* software-as-a-service or cloud computing service that would not be an eavesdropper under *Javier's* "capability" test.

Plaintiffs have not alleged any facts supporting a plausible inference that Invoca recorded customer service calls for any purpose other than for DirecTV and DISH's own use. To the extent the scant allegations reflect anything, they show that Invoca is a service provider that provides a customer service tool to DISH and DirecTV. Plaintiffs admit that DISH and DirecTV partner with Invoca and use Invoca's services to optimize their consumers' buying journeys. Am Compl. ¶ 1. Plaintiffs alleged that Invoca "recorded and transcribed [Plaintiffs'] conversation[s] in real time" and analyzed them "before [they were] provided to any entity that was a party to the conversation (like DISH or DirecTV)." *Id.* ¶¶ 11, 13 16, 42. These allegations are similar to the allegations in *Yockey*. In *Yockey*, the court found that allegations that Salesforce, a third-party software provider, ran the chat function, could view transcripts in real time, and would analyze the customer-support agent interactions in real time to create live chat transcripts did not support "a reasonable inference that Salesforce has the capability to use these communications for any purpose other than furnishing

FENWICK & WEST LLP
ATTORNEYS AT LAW

them to Kaiser." *Yockey,* 688 F. Supp. 3d at 973. Thus, Invoca was merely operating as a tool for DISH and DirecTV to communicate with their own customers. *Williams*, 2022 WL 17869275, at *3 (distinguishing between vendors that use client data for separate business purposes versus those that use it solely in their capacity as a service provider); *see also Graham*, 533 F. Supp. 3d at 832-33 ("[u]nlike NaviStone's and Facebook's aggregation of data for resale, there are no allegations here that FullStory intercepted and used the data itself."); *Yockey,* 688 F. Supp. 3d at 973 (granting motion to dismiss Plaintiff's CIPA Section 631 claim).

Even if the Court were to apply the *Javier* "capability" standard, the complaint does not satisfy it. While the complaint incants the word "capability" four times, it does so in only a conclusory fashion. The *only* Invoca service the complaint alleges any facts supporting a plausible inference that DirecTV or DISH use is call recording, because it alleges DirecTV and DISH provided notice that consumers calls may be recorded. Am. Compl. ¶ 7. The complaint is otherwise devoid of *any* factual allegations to support an inference that either customer uses Invoca's other services or that Invoca can use the recordings for its own purposes that are independent of servicing its customers. To the contrary, throughout the complaint, Plaintiffs allege that Invoca can provide various services from customer communications for its customers' use. *See, e.g.,* Am. Compl. ¶ 5 ("Invoca needs access to this data *to provide the Services' features* (including, *inter alia*, call recording, call transcription, and analysis thereof) described *infra*") (emphasis added); ¶ 35 ("Signal AI Studio is '[p]owered by patented machine learning' *and allows Invoca clients to* 'create AI models trained on [their] business's calls that capture the intent, product/service interest, and conversion outcome of every conversation'") (emphasis added); ¶ 37 (Automated Quality Assurance "*allows Invoca clients to* '[e]valuate 100% of inbound calls [m]ov[ing] from manually scoring a fraction of customer interactions to automatically scoring all of them[ and] … the entire call'") (emphasis added); ¶ 38 (Signal AI Discovery "*allows Invoca clients* to '[l]earn new and unexpected insights from thousands of calls at once'") (emphasis added). All of these allegations speak to the capabilities of how Invoca's customers can use Invoca's software to process recorded calls, not capabilities that Invoca can use for its own purposes.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Plaintiffs' reliance on Invoca's online Terms of Service (the "Terms") to argue that Invoca is capable of using their recorded calls for Invoca's own purposes is both conclusory and wrong. First, the complaint nowhere alleges that DirecTV or DISH agreed to Invoca's online Terms, rather than negotiating agreements for their uses. Second, the complaint misleadingly partially quotes the Terms, alleging that the "Terms of Service also allow Invoca to use the recorded information 'to optimize and improve Services or otherwise operate Invoca's business.'" Am. Compl. ¶ 48. The Terms include no such provision. Instead, this permission applies to "Usage Data," which the Terms define as "data regarding web applications utilized in connection with the Service, configurations, log data, and the performance results for the Service." *See* Declaration of Tyler Newby ("Newby Decl."), Ex. A (https://www.invoca.com/dt-terms-of-service, ¶ d.c.).[1] "Usage Data" does not include call recordings. The complaint's partial quote of a passage from the Terms that customers give Invoca a license to use "Client Data, as reasonably necessary for Invoca to provide and enhance [i.e., improve] its provision of Services" is equally misleading. Am. Compl. ¶ 47. First, the term "improve" does not appear in the actual Terms. Second, the complaint omits statements in the same provision that "Client owns its Client Data" and "Invoca acquires no right, title or interest from Client or Client's Agents and/or Users under this Agreement in or to any Client Data." Newby Decl. Ex. A, ¶ d.a. With this complete context, it is clear that Invoca's limited license to a Client's Data is to provide and enhance the services *to that customer*, not for Invoca's own purposes.

The complaint's selective quotations from Invoca's privacy policy are also misleading. Plaintiffs allege that the Privacy Policy includes "'[i]nformation about your calls to us, including phone numbers and recordings'" in the definition of "Personal Data," and that the policy discloses a broad range of uses of that data. Newby Decl. Ex. B (https://www.invoca.com/privacy-policy) at 3.

---

[1] The Court may take judicial notice of the Terms, which the complaint incorporates by reference by extensively quoting from them. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003-05 (9th Cir. 2018) (affirming district court's incorporation by reference of documents referred to extensively in the complaint and explaining that a court generally "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6).")(citation omitted); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 813 (N.D. Cal. 2020) (incorporating by reference defendant's terms of service and privacy policy).

FENWICK & WEST LLP
ATTORNEYS AT LAW

But the Privacy Policy makes clear that "your calls to us, including phone numbers and recordings" refers to "when you interact with our website or call us," *not* when Invoca records a call to an Invoca customer. *Id.* The Privacy Policy distinguishes calls made directly to Invoca from "Categories of information collected from or on behalf of our Clients," which "may include the content of recorded telephone calls." *Id.* at 4. For those recordings, which are the subject of the amended complaint, the Privacy Policy makes clear that "[o]ur clients control this Personal Data and its collection and use are governed by their respective privacy policies, which may differ from Invoca's policy." *Id.*

Under any standard, the complaint fails to state a claim under CIPA Section 631(a) and should be dismissed with prejudice.

**2. Plaintiffs' Section 632(a) Claims Fail—Count II.**

CIPA Section 632 prohibits the intentional use of any "electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication." Cal. Pen. Code. § 632(a). The party "bringing a CIPA claim has the burden to prove that the defendant lacked consent to record." *Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019). Plaintiffs fail to plead both absence of consent and that they had an expectation of privacy in their calls.

It is beyond dispute that Plaintiffs gave express consent for their calls to be recorded. Plaintiffs allege that they called DISH and DirecTV customer service phone numbers. Am. Compl. ¶¶ 10-16. They also allege that "DISH consumers are told that their calls will be 'monitored and recorded for quality assurance or training purposes.'" *Id.* ¶ 7. Similarly, Plaintiffs also allege that DirecTV consumers "are told that their calls will be 'recorded for quality assurance.'" *Id.* Thus, Plaintiffs do not dispute, nor could they, that they were aware that their phone calls were being recorded when they called DISH and DirecTV. By continuing with the call after hearing the message, Plaintiffs consented to the recording of their calls with DISH and DirecTV. *See Maghen v. Quicken Loans Inc.*, 94 F. Supp. 3d 1141, 1147 (C.D. Cal. 2015) (no CIPA violation where recording of call was announced during the call). Plaintiffs' consent to the recording of their calls is fatal to their claim that those calls were confidential. *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77, 117 Cal.Rptr.2d 574, 41 P.3d 575 (2002) ("[A] conversation is confidential under Section

632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded."). Plaintiffs' consent to their call being recorded forecloses their CIPA Section 632 claims, which should be dismissed with prejudice.

**3. Plaintiffs' Section 637.5 Claims Fail—Count III.**

CIPA Section 637.5 prohibits a person "who owns, controls, operates, or manages a satellite or cable television corporation, or who leases channels on a satellite or cable system," from using "any electronic device to record, transmit, or observe any events or listen to, record, or monitor any conversations that take place inside a subscriber's residence, workplace, or place of business, without obtaining the express written consent of the subscriber." Cal. Pen. Code. §§ 637.5(a), 637.5(a)(1). "Any person receiving subscriber information from a satellite or cable television corporation shall be subject to the provisions of this section." *Id.* § 637.5(h).

FENWICK & WEST LLP
ATTORNEYS AT LAW

CIPA Section 637.5 does not apply to Invoca because the complaint does not allege that Invoca owns, controls, operates, or manages a satellite or cable company. Even if that section were to apply to DISH or DirecTV, Plaintiffs allege that Invoca is a separate and distinct entity from those companies. *See* Am.Compl. ¶ 42. The complaint also does not allege that Plaintiffs' calls were recorded while they were in their homes, workplaces, or places of businesses. Rather, Plaintiffs Cohen and Busby simply allege that they were in California when they called DISH and DirecTV, and Plaintiff Casner alleges that he was in Pennsylvania when he called DirecTV. *See id.* ¶¶ 10, 12, 15. Additionally, the complaint lacks any factual allegations to support Plaintiffs' claim that Invoca received their "subscriber information." Rather, Plaintiffs allege in a conclusory fashion that "Invoca received subscriber information from DISH and DirecTV—including Plaintiffs' subscriber information" without identifying what information they provided. *Id.* ¶ 93. At best, Plaintiffs simply recite the elements of CIPA causes of action but fail to allege any facts suggesting that Invoca violated Section 637.5. The Section 637.5 claim should be dismissed with prejudice.

**4. Plaintiff Casner's CIPA Claims Fail For Additional Reasons.**

Plaintiff Casner's CIPA claims also fail because he is a Pennsylvania citizen asserting both a Pennsylvania WESCA claim and a California CIPA claim as a purported member of a nationwide

class based on the same alleged conduct. Plaintiff cannot assert violation of two state laws based on the same conduct. Casner alleges that he is a Pennsylvania citizen who was recorded when he called DirecTV from Pennsylvania. Am. Compl ¶ 15. Because WESCA was enacted to protect the privacy rights of Pennsylvanians within the state, Casner's allegations fall within the coverage of WESCA, not CIPA. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 130 (3rd Cir. 2022) (explaining that WESCA applies to conduct within Pennsylvania's borders).

"When faced with two recording laws, a court applies the law of the state where the aggrieved party whose privacy rights were invaded was located when recorded, not the law of the state where the recording party was located." *Erceg v. LendingClub Corporation*, 475 F. Supp. 3d 1071, 1078 (N.D. Cal. 2020); *see also In re Yahoo Mail Litig.*, 308 F.R.D. 577, 605-606 (N.D. Cal. 2015) (holding that, with invasion of privacy claims, an individual's claim "[is] governed by and decided under the wiretapping laws of the state in which [the individual] resides.").

In *Erceg,* the court held that a resident of California could not sue under Massachusetts wiretap law just because the party recording the call was in Massachusetts. In reaching that conclusion, the court applied a choice-of-law analysis and held that California had a greater interest in applying its privacy laws to protect the citizens of its state than Massachusetts did in applying its privacy laws to protect the citizens of a different state. Applying this same, sound logic here, Casner cannot assert claims under both California and Pennsylvania law. Because he alleges he lives in Pennsylvania and that he was recorded when making a call from Pennsylvania, his CIPA claim should be dismissed.

**5. Plaintiff Casner's Pennsylvania WESCA Claim Fails – Count IV.**

Like CIPA, WESCA is a criminal law that affords a private, civil right of action against a person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication." 18 Pa. C.S. § 5703. WESCA defines an oral communication as a communication "uttered by a person possessing an expectation" of privacy in that communication. 18 Pa. C.S. § 5702; *Commonwealth v. Brion*, 539 Pa. 256, 259-60 (1994) ("[T]he Act requires that a person uttering an oral communication, as that term is defined under the Act, must have a specific expectation that the contents of a discussion

FENWICK & WEST LLP
ATTORNEYS AT LAW

will not be electronically recorded.”).

Casner’s WESCA claim fails for the same reasons that the CIPA § 632(a) claim fails. Plaintiff gave express consent for his calls to be recorded. Plaintiff alleges that he called DirecTV’s customer service line. Am. Compl. ¶ 15. He also alleges that DirecTV consumers “are told that their calls will be ‘recorded for quality assurance.’” *Id.* ¶ 7. Thus, Plaintiff does not dispute, nor could he, that he was aware that his phone call was being recorded when he called DirecTV. By continuing with the call after hearing the message, Plaintiff consented to the recording of his call with DirecTV. Am. Compl. ¶¶ 15-16; *see Commonwealth v. Byrd*, 661 Pa. 85, 98-99 (2020). Plaintiff’s consent to the recording of his call forecloses his WESCA claim. *Brion*, 539 Pa. at 259-60.

### B. Plaintiffs’ Nationwide CIPA Claims Should Be Stricken Under 12(f), Or In The Alternative Dismissed Under 12(b)(6).

#### 1. The Court Should Strike the Nationwide CIPA Class Claims.

Choice-of-law principles preclude Plaintiffs’ nationwide CIPA claims. The Ninth Circuit has held that variations in state law pose insurmountable problems for proposed “nationwide” claims premised on alleged violations of state law like Plaintiffs’ alleged nationwide CIPA class claims. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-94 (9th Cir. 2012) (holding that the district court erred because it erroneously concluded that California law could apply to the entire nationwide class), *overruled on other grounds by Olean Wholesale Grocery Corp. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). California law may be applied on a classwide basis only if “the interests of other states are not found to outweigh California’s interest in having its law applied.” *Id. at* 590. California courts apply a three-step governmental interest test to determine whether the interests of other states outweigh California’s interest. The court must first determine whether the law of the other states is materially different from California law. *Id.* Second, if there are differences, the court determines whether the other state has an interest in having its law applied. *Id.* at 591. Third, if another state has an interest, the court determines which state’s interest would be most impaired if its policy were subordinated to the law of another state. *Id.* at 593.

Application of CIPA on a nationwide basis does not meet the governmental interest test. Plaintiffs purport to assert their California CIPA claims on behalf of a nationwide class of “all

United States residents who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, called DISH or DirecTV customer service agents and whose oral communications were intercepted and/or recorded by Invoca." Am. Compl. ¶ 51. At the first step, every state has adopted legislation regarding the propriety of recording its own citizens' calls and there are material differences between CIPA and the wiretapping statutes of the other 49 states. For example, some states only require single party consent, while CIPA requires consent of all parties. There are also material differences in the remedies given by state laws, as the amount of damages varies from state to state, and some states allow for injunctive relief while others do not. At the second step, every state has an interest in applying their own laws. *See, e.g., Mazza*, 666 F.2d. at 593 (each foreign state has an interest in applying its law to transactions within its borders," which means that "if California law were applied to [a nationwide class], foreign states would be impaired in their ability to calibrate liability to foster commerce."); *Yahoo,* 308 F.R.D. at 604 (holding that each state has an interest in apply its own wiretapping statutes); *Erceg,* 475 F. Supp. at 1078. At the final step, courts have found that "other states' interests would be most impaired by applying California law to non-Californian class members." *Yahoo,* 308 F.R.D. at 603; *see also Mazza*, 666 F.3d. at 594 ("California's interest in applying its law to residents of foreign states is attenuated."). While *Mazza* was at the certification stage, courts apply the same analysis at the motion to dismiss stage. *See Vinci v. Hyundai Motor Am.*, No. 17-0997, 2018 WL 6136828, at *7-10 (C.D. Cal. Apr. 10, 2018) (dismissing nationwide claims at the pleading stage); *Cover v. Windsor Surry Co.*, No.14-05262, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016) ("Mazza is 'not only relevant but controlling,' even at the pleading phase."); *Davison v. Kia Motors Am., Inc.*, No. 15-00239, 2015 WL 3970502, at *3 (C.D. Cal. June 29, 2015) (dismissing "nationwide" claims at pleading stage).

Plaintiffs' nationwide allegations should be stricken based on the material differences in state law, each state's interests in applying its own laws, and each state's impaired ability to apply its own law to calls and recordings within its borders.

FENWICK & WEST LLP
ATTORNEYS AT LAW

### 2. The Court Should Dismiss Casner's CIPA Claims Because They Do Not Allege A Sufficient California Nexus.

While some Courts have allowed non-California residents to bring CIPA claims when their communications were recorded or intercepted in California, those cases do not stand for the broad assertion that non-resident Plaintiffs may bring CIPA claims merely because Invoca is headquartered in California. Plaintiffs' cited authority demonstrate that Plaintiffs must allege a sufficient connection between the alleged conduct and California. *See, e.g., Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1026, 1028 (N.D. Cal. 2011) (holding that CIPA claims applied to non-California residents where plaintiff alleged that the conduct occurred in California); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 14-00751, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016) (holding that the plaintiff would have statutory standing to bring a CIPA claim if the relevant recordings took place in California); *Carrese v. Yes Online Inc.*, No. 16-05301, 2016 WL 6069198, at *4 (C.D. Cal. Oct. 13, 2016) (holding that plaintiffs had standing to bring CIPA claim because plaintiffs alleged that "all of the communication at issue were recorded by Defendant in California."). Casner does not allege that his calls were recorded or intercepted in California, nor does he provide any information about where the alleged recording or interception occurred. Instead, he relies solely on Invoca being headquartered in California. However, the location of Invoca's headquarters does not establish the location of where the recording takes place. The complaint fails to include the necessary factual allegations to support the non-California residents' CIPA claims. As such, the Court should dismiss Casner's CIPA claim and the nationwide CIPA claims for failure to plead the necessary nexus to California.

## CONCLUSION

For the foregoing reasons, Invoca respectfully requests that the Court dismiss the amended complaint with prejudice.

Dated: November 26, 2024

FENWICK & WEST LLP

By: */s/ Tyler G. Newby*
Tyler G. Newby
Attorneys for Defendant, Invoca, Inc.

FENWICK & WEST LLP
ATTORNEYS AT LAW