**BURSOR & FISHER, P.A.**
Julia K. Venditti (State Bar No. 332688)
1990 North California Boulevard, 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: jvenditti@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com

**GUCOVSCHI ROZENSHTEYN, PLLC**
Adrian Gucovschi*
630 Fifth Avenue, Suite 2000
New York, NY 10111
Telephone: (212) 884-4230
Email: adrian@gr-firm.com

**Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RUHSON BUSBY, JILL COHEN, and STEPHEN CASNER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INVOCA, INC.,<br><br>Defendant. | Case No. 3:24-cv-05542-JD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. James Donato<br>Date: February 6, 2025<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor |

## TABLE OF CONTENTS


PAGE(S)

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

III. ARGUMENT .......... 5

A. Plaintiffs State A Claim Under CIPA And WESCA .......... 5

1. Plaintiffs State A Claim Under CIPA § 631 .......... 5

2. Plaintiffs State A Claim Pursuant To CIPA § 632(a) .......... 12

3. Plaintiffs State A Claim Pursuant To CIPA § 637.5 .......... 14

4. Choice Of Law Considerations Are Premature As To Plaintiff Casner's Claims .......... 15

5. Plaintiff Casner States A Claim Under WESCA .......... 17

B. Defendant's Motion To Strike Or Dismiss Plaintiffs' Nationwide CIPA Claims Is Premature, And Otherwise Fails Because CIPA Applies To Individuals Outside California Where, As Here, Defendant Is A California Entity .......... 19

1. Defendant's Motion To Strike Plaintiffs' Nationwide CIPA Claims Is Premature .......... 19

2. Plaintiffs Plausibly Allege A Sufficient California Nexus To Sustain Their Nationwide CIPA Claims .......... 20

IV. ARGUMENT .......... 22

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Bias v. Wells Fargo & Co.*,
942 F. Supp. 2d 915 (N.D. Cal. 2013) ..... 16

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
2016 WL 3543699 (S.D. Cal. June 29, 2016) ..... 22

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ..... 6

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ..... 13

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ..... 13

*Carrese v. Yes Online Inc.*,
2016 WL 6069198 (C.D. Cal. Oct. 13, 2016) ..... 22

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ..... 19, 21

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ..... 16, 19, 20, 21

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) ..... 8

*Flowers v. Twilio, Inc.*,
2016 WL 11684603 (Cal. Super. Ct. Aug. 2, 2016) ..... 14

*Gladstone v. Amazon Web Servs., Inc.*,
2024 WL 3276490 (W.D. Wash. July 2, 2024) ..... 9

*Heerde v. Learfield Commc'ns, LLC*,
2024 WL 3573874 (C.D. Cal. July 19, 2024) ..... 6

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010) ..... 20, 21

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) ..... 16

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ..... 13

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) ........ 16, 19, 20

*Jackson v. LinkedIn Corp.*,
2024 WL 3823806 (N.D. Cal. Aug. 13, 2024) ........ 9

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 6, 8, 9, 11

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ........ 7

*Kellman v. Spokeo, Inc.*,
599 F. Supp. 3d 877 (N.D. Cal. 2022) ........ 19, 20

*Louis v. Healthsource Glob. Staffing, Inc.*,
2022 WL 4866543 (N.D. Cal. Oct. 3, 2022) ........ 7

*Maghen v. Quicken Loans Inc.*,
94 F. Supp. 3d 1141 (C.D. Cal. 2015) ........ 13

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ........ 19

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ........ 7

*Oman v. Delta Air Lines, Inc.*,
889 F.3d 1075 (9th Cir. 2018) ........ 22

*Oman v. Delta Air Lines, Inc.*,
9 Cal. 5th 762 (2020) ........ 22

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ........ 18

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 10, 11

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) ........ 22

*Schmitt v. SN Servicing Corp.*,
2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) ........ 22

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ........ 6, 9

*Tate v. Vitas Healthcare Corp.*,
2025 WL 50447 (E.D. Cal. Jan. 8, 2025) ........ 2, 8, 10, 13

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ........ 22

*Valentine v. NebuAd, Inc.*,
804 F. Supp. 2d 1022 (N.D. Cal. 2011) ........ 16, 17, 21

*Vonbergen v. Liberty Mut. Ins. Co.*,
705 F. Supp. 3d 440 (E.D. Pa. 2023) ........ 17

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ........ 9

*Yockey v. Salesforce, Inc.*,
2024 WL 3875785 (N.D. Cal. Aug. 16, 2024) ........ 18

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 6, 7

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007) ........ 7

**STATUTES**

18 Pa. Cons. Stat. § 5701 ........ 1, 2

18 Pa. Cons. Stat. § 5704(4) ........ 17, 18

Cal. Penal Code § 631 ........ 1

Cal. Penal Code § 632 ........ 1, 12, 17

Cal. Penal Code § 637.5 ........ 14, 15

Cal. Pub. Util. Code § 216.4 ........ 15

## STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L. R. 7-4(A)(3)

1. Whether Plaintiffs Ruhson Busby, Jill Cohen, and Stephen Casner (collectively, "Plaintiffs") state a claim under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 632 where Defendant Invoca, Inc. ("Defendant" or "Invoca") eavesdropped on Plaintiffs' and the class members' communications from cable and satellite television providers (DISH and DirecTV), which involved sensitive information such as financial information for payment processing and other forms of information required for the purpose of identity verification, without the consent of Plaintiffs.

2. Whether Plaintiffs state a claim under CIPA § 637.5 where Defendant intercepted Plaintiffs' subscriber information from cable and satellite television, including financial information for payment processing and other forms of information required for the purpose of identity verification, without the consent of Plaintiffs.

3. Whether Plaintiff Casner states a claim under the Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18 Pa. Cons. Stat. §§ 5701, *et seq*., where Defendant intercepted Plaintiffs' subscriber information from cable and satellite television providers without his prior consent to the interception.

4. Whether Plaintiffs allege a sufficient nexus between Invoca's conduct and California to support extraterritorial application of CIPA nationwide based on Invoca's development, operation, and use of its intelligence software to intercept and route Plaintiffs' and the class members' private communications to Invoca's corporate headquarters in California.

## I. INTRODUCTION

Plaintiffs hereby oppose Defendant's Motion to Dismiss First Amended Complaint (ECF No. 23) ("MTD"). Plaintiffs state a claim under CIPA § 631(a) and § 632 because Defendant—an unknown third party—intentionally, and without the consent of Plaintiffs and class members, intercepted sensitive and confidential communications between Plaintiffs and the class members (on the one hand) and DISH and DirecTV (on the other) by eavesdropping on their customer service calls. Specifically, Defendant intercepted Plaintiffs' and the class members' financial information and other forms of information required for the purpose of identity verification,

without the consent of Plaintiffs, over which Plaintiffs maintained a reasonable expectation of privacy. Because Defendant received the above-referenced subscriber information from cable and satellite television corporations, Defendant also violated CIPA § 637.5. For those same reasons, Defendant's conduct also violated Plaintiff Casner's rights under the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18 Pa. Cons. Stat. §§ 5701, *et seq*.

Defendant's motion to dismiss contends that Plaintiffs have failed to state claims under CIPA and WESCA and seeks to dismiss Plaintiffs' nationwide CIPA claim based on choice of law grounds. None of Defendant's arguments have merit, as Plaintiffs have plausibly stated their claims for the reasons set forth above and herein, and because choice of law considerations are premature and should be addressed at the class certification stage (and, in any event, Defendant's arguments are wrong). Indeed, many of Defendant's arguments were rejected yesterday in *Tate v. Vitas Healthcare Corp.*, 2025 WL 50447 (E.D. Cal. Jan. 8, 2025), a case alleging CIPA claims based on the same Invoca software at issue here. For the reasons set forth herein and in *Tate*, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss and motion to strike in full.

## II. STATEMENT OF FACTS

Invoca operates a conversation intelligence software-as-a-service ("SaaS") product that it sells to third party businesses, including cable and satellite providers such as DISH and DirecTV. *See* FAC ¶ 1. When a customer places a call with the customer service agents of DISH and DirecTV, Invoca's software captures the caller's speech patterns, transcribes the conversation, and then uses artificial intelligence ("AI") to classify the call into one of several subcategories (*e.g.*, new subscriber inquiries, existing customer concerns, and assisting with subscription cancellations). *Id.* ¶¶ 1, 33. To accomplish this, Invoca surreptitiously transmits the conversation to its own servers, and then presents the information back to its clients using tools such as dashboards, searchable transcripts, and reports. *Id.* ¶¶ 1, 33. In so doing, Invoca collects a trove of data from telephone conversations between businesses (here, DISH and DirecTV) and their consumers. *Id.* ¶ 4.

Invoca's conversation intelligence software includes several services (hereafter, the "Services"), which include: (1) Signal AI Studio; (2) Automated Quality Assurance; (3) Signal AI Discovery; (4) Call Recordings and Transcriptions; and (5) Conversational Interactive Voice Response ("IVR"). *Id.* ¶ 2.

First, the Signal AI Studio enables Invoca to categorize speech data using AI into specific categories related to its client's business, such as caller intent (*e.g.*, the reason for the call from the customer), caller interest (*e.g.*, the specific service inquired about), conversation outcome (*e.g.*, whether the call resulted in a sale or cancellation of the service), call events (*e.g.*, request to speak to a supervisor), and Voice of Customer Insights (*e.g.*, whether customer called about pricing or product feature). *Id.* ¶¶ 35-36. To accomplish this, Invoca analyzes the contents of the phone call. *Id.* ¶ 36.

Second, the Automated Quality Assurance Service enables Invoca to analyze 100% of inbound calls to both identify the specific customer service agent and score their performance in handling customer inquiries or concerns for coaching purposes. *Id.* ¶ 37.

Third, the Signal AI Discovery Service analyzes call data to identify general trends and concerns underlying customer phone calls. *Id.* ¶ 38. To do so, Invoca eavesdrops on all incoming calls, sends them to its servers, and deploys its AI to find common denominators by aggregating and analyzing the data behind all calls. *Id.*

Fourth, the Call Recordings and Transcriptions Service provides a searchable database of every call recording created by Invoca for its licensees (such as DISH and DirecTV). *Id.* ¶ 39. Invoca states that it "begins recording as soon as [a] call connects — and stays on the call no matter where it's transferred to — to capture the complete caller experience, every time." *Id.* Said another way, Invoca eavesdrops on the call from the moment the call connects and continues eavesdropping on the call until it concludes. Similarly, Invoca provides a database of transcriptions of calls, powered by its generative AI. *Id.* ¶ 40.

Fifth, the Conversational IVR Service automates at least part of the interaction between the business licensee and its customers, during which the computerized system gathers relevant information from the caller and directs them to the correct internal menu option or to live support,

as needed. *Id.* ¶ 41. To perform the IVR service, Invoca captures the substance of the communications from the caller, including both verbal words and keypresses. *Id.* Each of the Services permits Invoca to eavesdrop upon, record, extract data from, and analyze conversations to which it is not a party. *Id.* ¶ 42.

Invoca, through the Services, has the capability to use the contents of these conversations for its own purposes beyond simply furnishing recordings to its clients, such as DISH or DirecTV. *Id.* ¶ 43. In fact, Invoca admits that it *does* use the contents of the "phone numbers and recordings" to (i) "improve, operate, maintain, and, in some cases, market the Invoca Platform and our Services"; (ii) to "conduct internal research in order to enhance the Invoca Platform and Services"; and (iii) to "keep you up to date on the latest Invoca Platform and Services announcements, special offers, and other information." *Id.* ¶ 46; *id.* ¶ 47 ("Client grants to Inova…Client Data, as reasonably necessary for Invoca to provide and enhance [i.e., improve] its provision of Services."); *id.* ¶ 48 (stating that Invoca uses call recordings "to optimize and improve Services or otherwise operate Invoca's business.").

DISH and DirecTV employ Defendant's Services. *Id.* ¶ 2. In doing so, "DISH and DirecTV have aided, agreed with, employed, and/or permitted Invoca to monitor, read, record, learn the contents of, or otherwise intercept the conversations of their current and prospective consumers without their consent." *Id.* ¶ 3. Every inbound call from consumers (such as Plaintiffs) to either DISH or DirecTV was surreptitiously transmitted to Invoca in real-time. *Id.* ¶ 1. This includes individuals who call DISH and DirecTV within the States of California and Pennsylvania to, among other things, retrieve information, schedule service appointments, make changes to subscriptions, and receive additional forms of customer support. *Id.* ¶ 3. Unbeknownst to callers, Invoca secretly eavesdrops and records their conversations through the use of its Services, as described above. *Id.* ¶ 4. Invoca is not a party to the conversations; instead, customers reasonably believe that the conversations are between them and the employees of DISH or DirecTV. *Id.* ¶ 4. Neither DISH, DirecTV, nor Invoca disclosed the presence of a third-party auditor, nor did they procure the consent of consumers prior to Invoca recording, accessing, reading, and learning the contents of their conversations. *Id.* ¶ 6.

Indeed, while DISH consumers are told that their calls will be "monitored and recorded for quality assurance or training purposes," and DirecTV consumers are told that their calls will be "recorded for quality assurance," there is no disclosure that consumers' calls would (1) be intercepted by Invoca, an unknown third party, for (2) purposes unrelated to quality assurance and/or training. *Id.* ¶ 7.

Plaintiff Ruhson Busby is a California resident who called DISH's customer service line in or around July 2024. *Id.* ¶ 10. In placing the call to DISH, Plaintiff Busby reasonably expected that the conversation was only between himself and DISH and he was not made aware that his phone call was being surreptitiously transmitted to an unknown third party, Invoca. *Id.* Invoca, through the Services, eavesdropped on Mr. Busby's entire conversation with DISH, recorded and transcribed Plaintiff Busby's conversation in real-time, and performed AI analysis thereon. *Id.* ¶ 11. Plaintiff Busby did not consent to a third-party analytics provider's eavesdropping, interception, and use of his communications with DISH. *Id.* Similarly, Plaintiff Busby did not consent for the contents of his communications to be used for *purposes other* than DISH's quality assurance and training purposes— such as, "Invoca's marketing analytics, AI development, and industry reports, amongst other uses." *Id.* Plaintiff Jill Cohen, also a California resident, makes similar allegations, except that she called DirecTV instead of DISH in or around July of 2024. *Id.* ¶¶ 12-13. Plaintiff Stephen Casner, a Pennsylvania resident, makes the same allegations regarding his call to DirecTV's customer service line on or around September 5, 2024. *Id.* ¶¶ 15-16.

## III. ARGUMENT

### A. Plaintiffs State A Claim Under CIPA And WESCA

#### 1. <u>Plaintiffs State A Claim Under CIPA § 631</u>

CIPA § 631 creates avenues for relief where a person: (1) "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection ... with any telegraph or telephone wire, line, cable, or instrument"; (2) "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit"; and (3) "uses, or attempts to use, in any manner, or for any purpose,

or to communicate in any way, any information so obtained[.]" *Heerde v. Learfield Commc'ns, LLC*, 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024) (quoting *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023)). Here, Plaintiffs plausibly state a claim under each of the above-mentioned prongs of CIPA. CIPA § 637.2 provides a civil cause of action to anyone who violates § 631. *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1196 (N.D. Cal. 2024).

As to the first prong, Plaintiffs plausibly allege that Defendant used its software Services as a "machine, instrument, contrivance" to "tap[], or makes an[] unauthorized connection" on the "telephone wire, line, cable, or instrument" that Plaintiffs and the class members used when they called DISH or DirectTV. FAC ¶¶ 1-5, 10-17, 64. Plaintiffs have, therefore, adequately alleged a violation of CIPA § 631(a)'s first prong.[1]

As to the second prong, Plaintiffs plausibly allege that Defendant read the contents of their communications with both DISH and DirecTV because the Services functioned to record and transcribe the customer service calls, which Defendant's software then used to batch the calls, based on their contents, into separate categories through its proprietary AI. *Id.* ¶¶ 1, 5, 42-49. Furthermore, Plaintiffs allege, and Defendant does not dispute, that it willingly intercepted and read their communications. *Id.* ¶ 67. Finally, Plaintiffs sufficiently allege that Defendant performed these acts without adequate consent because neither Defendant, DISH, nor DirecTV informed Plaintiffs or the class members that an unaffiliated third-party analytics provider was redirecting their calls in real-time to its own servers. *Id.* ¶¶ 3, 6-7, 11, 13, 16, 39, 50, 68-70. Plaintiffs have, therefore, adequately alleged a violation of CIPA § 631(a)'s second prong.

As to the third prong, Plaintiffs plausibly allege that Defendant used the information obtained from contents of their communications with both DISH and DirecTV for numerous purposes, including analyzing the data and delivering it to its customers in the form of dashboards, reports, and raw data. *See id.* ¶¶ 1, 33, 41. In addition, Invoca used the data for its own marketing

[1] There is no "content" requirement under the first provision of CIPA § 631. *See Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (explaining the "content" requirement only applies to CIPA provisions that use this language); *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (same).

analytics, AI development, and industry reports, amongst other unauthorized uses. *See id.* ¶¶ 11, 13, 16. Plaintiffs have, therefore, adequately alleged a violation of CIPA § 631(a)'s third prong.

In its motion to dismiss, Defendant improperly attempts to rewrite Plaintiffs' well-pled allegations to fit its own narrative. In so doing, it misstates the facts and law every step of the way. As a threshold matter, Defendant does not dispute that it willfully wiretapped the at-issue communications, nor does it argue that Plaintiffs consented to Defendant's reading of the contents of their communications. As such, Defendant has waived any arguments to the contrary. *See Louis v. Healthsource Glob. Staffing, Inc.*, 2022 WL 4866543, at *2 (N.D. Cal. Oct. 3, 2022) (Donato, J.) ("Paragraph 15 of the Court's Standing Order for Civil Cases expressly bars raising new arguments in a reply, to avoid sandbagging and other inequitable conduct.") (citing *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)).

Defendant's sole argument to dismiss Plaintiffs' CIPA § 631(a) claim is based on the flawed premise that "the complaint fails to allege that Invoca is a third party that makes independent use of recorded calls rather than an extension of DISH and DirecTV." MTD at 4. In other words, Invoca argues that it is entitled to the so-called party exception under CIPA. *See id.* at 4-5. Defendant's argument is wrong and is belied by the factual allegations in the FAC, which are entitled to the presumption of truth. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (explaining that "all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them"). To start, numerous courts have held that determining whether an analytics provider like Defendant is a party to the communication or a third-party eavesdropper is a question of fact not suitable for determination on a motion to dismiss. *See Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *7 (S.D. Cal. Jan. 12, 2024) ("Whether FullStory acts akin to a tape recorder or whether its actions are closer to 'an eavesdropper standing outside the door' is a question of fact which is better answered after discovery into the session replay technical context of the case."); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) ("The question thus becomes, in analogue terms: is Quantum Metric a tape recorder held by Lululemon, or is it an eavesdropper standing outside the

door? This is a question of fact for a jury, best answered after discovery into the storage mechanics of Session Replay."); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 942 (S.D. Cal. 2024) (same).

Setting aside Defendant's procedurally premature arguments, the FAC is replete with facts that plausibly establish that Invoca is a third-party eavesdropper. Specifically, Plaintiffs allege that Invoca: (1) records the calls between Plaintiffs and class members and DISH or DirecTV, transcribes them, and reads them to provide insights to DISH and DirecTV in the form of dashboards, searchable raw data, and reports (*see* FAC ¶¶ 1, 33, 35, 38, 39-40); (2) records the calls and reads the contents of the calls to place them into categories to discern the caller's intent, interest in a certain product or service, the outcome of the call, important words to infer general trends across the calls, and to gauge the performance of customer service agents (*see id.* ¶¶ 36, 37); and (3) intercepts the substance of the communication with the customer (or prospective customer) through its IVR service to route them to the correct agent or menu (*see id.* ¶ 41). Indeed, Invoca concedes that its software "begins recording as soon as [a] call connects — and stays on the call no matter where it's transferred to — to capture the complete caller experience, every time." *Id.* ¶ 39. In short, Invoca "uses the Services to eavesdrop upon, record, extract data from, and analyze a conversation to which it is not a party." *Id.* ¶ 42. Invoca intercepted Plaintiffs' communications with DISH and DirecTV in real time, as the call was occurring. *See id.* ¶¶ 11, 13, 16.

Further, it is irrelevant whether Invoca "makes independent use of recorded calls" between consumers and DISH or DirecTV. MTD at 4. Indeed, just yesterday, a court in the Eastern District rejected a substantially similar argument in another CIPA case concerning Invoca's same technology at issue here, and recognized that "Section 631(a)'s text … does not actually contain a use requirement." *Tate v. Vitas Healthcare Corporation*, 2025 WL 50447, at *4 (E.D. Cal. Jan. 8, 2025) (citing *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 899-900 (N.D. Cal. 2023)).[2] **"In**

[2] *See also id.* ("In weighing the plaintiff's section 631(a) claim, the *Javier* court critiqued [the argument] that a third-party software developed would need to use the data for its own purposes in order for it to violate section 631(a). The *Javier* court noted that there is already a use requirement in one of section 631(a)'s discrete clauses ('us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained'), and therefore it would be improper to impute that use requirement to all of section 631(a). The court in that case also noted that … to consider a third party's intent in obtaining data here would similarly be improper.

**other words, an entity can violate the statute by learning the contents of the message *or* by using information obtained from listening in on a conversation**." *Id.* (italics in original, bolding added for emphasis). The *Tate* court therefore found "it unnecessary to consider a third party's intention to collect or use data from a call" and held that "Obtaining that data while reserving the capability to utilize it makes a third party distinct from one of the parties to the call and may trigger a violation of section 631(a)." *Id.* Thus, Defendant's insistence that "the complaint fails to allege that Invoca … makes independent use of recorded calls," MTD at 4, is of no moment.

In any case, as Plaintiffs allege, Invoca uses the intercepted information for its own benefit, such as to further enhance its AI and other *proprietary* technology that is uses to render the Services (*i.e.*, using the substance of the intercepted communications to make its product offerings better and more compelling to customers). *See* FAC ¶¶ 47-48. At the very least, because Invoca transmits the communications to its own servers, analyzes them, and exercises control over them, it has the capability to use the intercepted information for its own purposes. *See id.* ¶¶ 43, 49; *see also Jackson v. LinkedIn Corp.*, 2024 WL 3823806, at *5 (N.D. Cal. Aug. 13, 2024) (finding violation of CIPA § 631 where "LinkedIn received this sensitive data and read and used it for its own marketing services"); *Javier*, 649 F. Supp. 3d at 900; *see also Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972–73 (N.D. Cal. 2023) (agreeing with *Javier* that the question is whether the third party has the capability to use its record of the interaction, regardless of the third party's specific intent); *Smith*, 735 F. Supp. 3d 1188 (rejecting argument that Google was a mere "vendor" where Google read and used the analytics data by: (1) using the data to power its algorithms; (2) gaining detailed information about its users; and (3) collecting and aggregating the data to present to its customers on a dashboard); *Gladstone v. Amazon Web Servs., Inc.*, 2024 WL 3276490, at *6 (W.D. Wash. July 2, 2024) ("Plaintiff's allegations demonstrate that Defendant has capabilities beyond that of a mere tape recorder, and there is no evidence that Defendant is incapable of using the data for any other purpose.").

---

The Court finds *Javier*'s reasoning to be [] persuasive.") (internal citations omitted) (citing, *inter alia*, *Javier*, 649 F. Supp. 3d at 900).

Moreover, as the *Tate* court pointed out, "Invoca's Terms of Service expressly reserve the ability to use 'Client Data, as reasonably necessary for Invoca to provide and enhance its provision of services.'" *Tate*, 2025 WL 50447, at *5 (internal citation omitted); see also FAC ¶ 47 (quoting the "'Invoca Terms of Service'" in relevant part). "Under these Terms of Service, Invoca *may* use the data obtained from calls placed to VITAS to improve its own product and services. Invoca's software has already allegedly violated the caller's privacy; **whether Invoca actually uses the contents of the call for its own purposes is not legally relevant**.") (italics in original, bolding added for emphasis). "Accordingly, the [*Tate* c]ourt f[ound] that Invoca, via its software, is a third party, distinct from both Plaintiff [] and … VITAS[ Healthcare Corporation], and that Invoca's ability to use the data obtained for its own purposes may be sufficient to trigger section 631(a) liability." *Id.*

This Court should follow *Tate*'s lead. The facts alleged in the FAC make clear that this case is not akin to DISH or DirectTV holding a handheld tape recorder. Rather, this case is far more akin to *Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985), wherein the court found a violation of CIPA § 631 where a third-party eavesdropped on the communication between the plaintiff and his ex-wife, reasoning that "a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." Here, Invoca software stands in the place of the third party in *Ribas* as its Services were acting as an unannounced auditor transmitting the contents of the communication to its own servers for processing and to improve Defendant's own product offerings. *See* FAC ¶¶ 11, 13, 16, 47-48.

In sum, courts have strived to strike a fair balance in the digital age between software products that function like a physical tape recorder (which do not violate § 631) and products that have functions beyond a mere tape recorder that allow a third-party software provider to eavesdrop on communications (which violate § 631). Physical tape recorders do not transmit information to a third party, they do not analyze information, transcribe information, package and organize information, or use information to improve its performance to become more competitive vis-à-vis other tape recorders, yet Defendants Services do all of these things, which makes Defendant's

software wholly distinct from a tape recorder. That is why *Javier*'s capability test is a faithful application of the statutory language because the capability to use the information for Defendant's own purposes is what makes it more like the third-party in *Ribas* and less like a physical tape recorder; Defendant's intent to use that information or not use that information is immaterial because the privacy violation occurs from Plaintiffs' and class members' loss of control over the information disclosed beyond the party to whom it is disclosed. *See Javier*, 649 F. Supp. 3d at 900 ("The *Ribas* Court did not consider the wife's friend's intentions or the use to which they put the information they obtained. Instead, it emphasized the privacy concerns at issue with having an 'unannounced second auditor' listening in on the call, when Section 631 concerns 'the right to control the nature and extent of the firsthand dissemination of [their] statements.'") (quoting *Ribas*, 38 Cal. 3d at 360–61).

As explained above, even if the Court were to require allegations of actual use of the data by Defendant beyond the provision of services to its clients, Plaintiff still states a claim because Defendant uses the intercepted data to "enhance its provision of Services." FAC ¶¶ 47-48. Defendant counters that the Terms of Service state that Invoca's clients own the data and grant Invoca a license to the same. MTD at 9. But that is not the point. The point is that Invoca retains a license to *use* the data to enhance the provision of its Services, which clearly shows that Invoca uses the data for its own purposes. Defendant editorializes the Terms of Service by arguing that "it is clear that Invoca's limited license to a Client's Data is to provide and enhance the services to that customer, not for Invoca's own purposes" (MTD at 9), but that is not what the Terms of Service say. The Terms of Service clearly state that Invoca licenses "Client Data" to enhance the Services, without limitation to any specific customer. *See* Declaration of Tyler G. Newby in Support of Defendant's Motion to Dismiss First Amended Complaint, Ex. A (ECF No. 23-2) ("Client grants to Invoca, its Affiliates and applicable contractors a worldwide, non-exclusive, transferable, royalty free license to **use**, host, copy, transmit, distribute and display Client Data, as reasonably necessary for Invoca to provide and **enhance its provision of Services**.") (Emphasis added). At best, the unsupported (and self-serving) assertions by counsel raise a question of fact that cannot be determined at the pleading stage. Therefore, Plaintiffs state a claim under CIPA § 631.

**2. Plaintiffs State A Claim Pursuant To CIPA § 632(a)**

Cal. Penal Code § 632(a) states, in pertinent part:

> (a) A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation ….

Further, Cal. Penal Code § 632(c) defines "confidential communication" as:

> any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

Plaintiffs state a claim under Cal. Penal Code § 632(a) because Defendant, without Plaintiffs' consent, eavesdropped on Plaintiffs' and class members' confidential phone communications with DISH or DirecTV, which included "discussions of financial information for payment processing[] and other forms of information required for the purpose of identity verification." FAC ¶ 80. The Invoca software (the Services) is an electronic recording device because it functions to electronically intercept and record Plaintiffs' interactions with DISH and DirecTV. *See id.* ¶ 78. Plaintiffs had a reasonable expectation of privacy when communicating with DISH and DirecTV because they were communicating sensitive information including financial information and identity verification information on the calls, and because neither Defendant nor DISH nor DirecTV made Plaintiffs aware that Defendant was eavesdropping on the phone calls. *See id.* ¶¶ 6-7, 11, 13, 16, 81-82.

Defendant argues that "Plaintiffs fail to plead both absence of consent and that they had an expectation of privacy in their calls." MTD at 10. Both arguments are wrong. *First*, as to consent, in addition to explicitly pleading that they did not consent to the conduct at issue (*see* FAC ¶¶ 3, 6-

7, 11, 13, 16, 50, 82), Plaintiffs also could not have possibly provided consent because Defendant did not "explicitly notify" Plaintiffs of the practice at issue. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) ("In order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue."). Here, DISH consumers are told that their calls will be "monitored and recorded for quality assurance or training purposes" and DirecTV consumers are told that calls will be "recorded for quality assurance." FAC ¶ 7. However, these representations do not "explicitly notify" Plaintiffs of the conduct at issue, namely that Invoca, a third party, is surreptitiously eavesdropping on the phone call and is accessing, reading, and learning the contents of Plaintiffs and consumers' communications with DISH and DirecTV. *See In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013) ("Google points to its Terms of Service and Privacy Policies, to which all Gmail and Google Apps users agreed, to contend that these users explicitly consented to the interceptions at issue. The Court finds, however, that those policies did not explicitly notify Plaintiffs that Google would intercept users' emails for the purposes of creating user profiles or providing targeted advertising."); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("However, as discussed above in the context of express consent, any consent with respect to the processing and sending of messages itself does not necessarily constitute consent to the specific practice alleged in this case—that is, the scanning of message content for use in targeted advertising."). Therefore, as the *Tate* court acknowledged just yesterday, Plaintiffs did not consent to Invoca's interception of their calls as a matter of law. *See Tate*, 2025 WL 50447, at *1 ("Neither VITAS nor Invoca obtain the consent of any caller to VITAS's call center …."); *id*. ("Defendant's Motion to Dismiss … is DENIED.").

Defendant relies on *Maghen v. Quicken Loans Inc.*, 94 F. Supp. 3d 1141, 1147 (C.D. Cal. 2015), but that case is obviously distinguishable because there the plaintiff sought to sue the counterparty to the phone call (Quicken Loans) for recording the call even though Quicken Loans specifically stated to the plaintiff through the terms of use and orally that the call would be recorded; that is, there was no unmentioned third party eavesdropper on the call as there is here. *Maghen* is not factually analogous to this case because Quicken Loans would be the equivalent to DISH or DirecTV, not Invoca. Plaintiffs are not suing DISH and DirecTV because they recorded

the call, they are suing Invoca because it eavesdropped on the call without consent. *Maghen* and this case are, therefore, premised on completely different factual scenarios. *See Flowers v. Twilio, Inc.*, No. RG16804363, 2016 WL 11684603, at *1 (Cal. Super. Ct. Aug. 2, 2016) ("Contrary to Twilio's characterization of the complaint, the complaint makes clear that it is Twilio, not its clients, that recorded the communications, and thus Twilio had possession and control of the contents of the communications, which it disclosed to its clients on request. The allegations are not, as Twilio asserts, that Twilio simply provided a software product that third parties misused.").

**3. <u>Plaintiffs State A Claim Pursuant To CIPA § 637.5</u>**

Cal. Penal Code § 637.5 states, in pertinent part:

> (a) No person who owns, controls, operates, or manages a satellite or cable television corporation, or who leases channels on a satellite or cable system shall:
>
> (1) Use any electronic device to record, transmit, or observe any events or listen to, record, or monitor any conversations that take place inside a subscriber's residence, workplace, or place of business, without obtaining the express written consent of the subscriber. A satellite or cable television corporation may conduct electronic sweeps of subscriber households to monitor for signal quality.
>
> …
>
> (f) As used in this section:
>
> (1) "Cable television corporation" shall have the same meaning as that term is given by Section 216.4 of the Public Utilities Code.
>
> (2) "Individually identifiable information" means any information identifying an individual or the individual's use of any service provided by a satellite or cable system other than the mere fact that the individual is a satellite or cable television subscriber. "Individually identifiable information" shall not include anonymous, aggregate, or any other information that does not identify an individual subscriber of a video provider service.
>
> …
>
> (h) Any person receiving subscriber information from a satellite or cable television corporation shall be subject to the provisions of this section.

Here, Invoca is a "person receiving subscriber information from a satellite or cable television corporation" because by eavesdropping on the calls at issue, Invoca received subscriber

information from DISH and DirecTV, both satellite or cable television corporations (*see* Cal. Penal Code § 637.5(f)(1), Cal. Pub. Util. Code § 216.4, and FAC ¶ 90), and therefore Invoca is subject to Cal. Penal Code § 637.5. Invoca's argument that "CIPA Section 637.5 does not apply to Invoca because the complaint does not allege that Invoca owns, controls, operates, or manages a satellite or cable company" is clearly incorrect because it disregards subsection (h), which clearly brings Invoca into the purview of the statute.

Invoca further argues that "[t]he complaint also does not allege that Plaintiffs' calls were recorded while they were in their homes, workplaces, or places of businesses." MTD at 11. But Plaintiffs allege that "[a]t all relevant times, through its Services, Invoca received subscriber information from DISH and DirecTV—including Plaintiffs' subscriber information—by using Invoca's Services to listen to, record, or monitor conversations **<u>that took place inside a subscriber's residence, workplace, or place of business</u>** when consumers would call DISH and DirecTV." FAC ¶ 93 (emphasis added). These allegations are further plausible given the nature of the conversations as customer service calls of the type recorded by Invoca, including those seeking "customer support" (FAC ¶ 3), are likely to take place in the home or workplace near the actual devices in the home or workplace, and the fact that each Plaintiff alleges they made the calls from their home states. *See id.* ¶¶ 10-17.

Defendant further argues that "the complaint lacks any factual allegations to support Plaintiffs' claim that Invoca received their 'subscriber information.'" MTD at 11. Yet, Defendant acknowledges Plaintiffs' factual allegations that Invoca intercepted and received their subscriber information. MTD at 11; FAC ¶ 93. Further, Plaintiffs allege that they divulged "discussions of financial information for payment processing, and other forms of information required for the purpose of identity verification." FAC ¶ 80. As such, Plaintiffs clearly divulged, and Defendant clearly intercepted, their subscriber information.

#### 4. <u>Choice Of Law Considerations Are Premature As To Plaintiff Casner's Claims</u>

Defendant argues that "Plaintiff Casner's CIPA claims also fail because he is a Pennsylvania citizen asserting both a Pennsylvania WESCA claim and a California CIPA claim as

a purported member of a nationwide class based on the same alleged conduct." MTD at 11-12. However, choice of law considerations are premature at the pleading stage. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1079 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) (rejecting as premature defendant's argument that CIPA claim should be dismissed because "none of the named plaintiffs are California residents").

As a threshold matter, there is no *per se* extraterritoriality bar against a non-citizen of California bringing a CIPA claim against a California entity like Defendant (FAC ¶ 18). *See Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) ("A legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-Californians to pursue claims against California residents. To conclude otherwise would mean the California Legislature intended to allow California residents to violate the CIPA . . . with impunity with respect to out-of-state individuals and entities, a result this Court declines to reach."); *Meta Platforms*, 690 F. Supp. 3d at 1079 ("I am denying the motion to dismiss the CIPA claim based on Meta's exterritoriality argument."). Further, the choice of law question is best reserved for the class certification stage, where the issues will be ripe for review. *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 928 (N.D. Cal. 2013) ("[T]he Court finds that the choice of law determination in this case is better suited for the class certification stage because the record with respect to balancing the competing states' interests is not sufficiently developed.").[3]

Finally, "[c]ourts have declined to conduct such an analysis at the motion to dismiss stage where further development of the record is necessary to properly decide the choice-of-law question." *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1170 (N.D. Cal. 2019). Here, Defendant, operating in California, very likely routed and analyzed Plaintiffs and class members communications within California, facts that will ultimately effect the choice of law analysis. *See Valentine*, 804 F. Supp. 2d at 1024, 1026 (finding that out-of-state individuals have

[3] Defendant cites *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 605-606 (N.D. Cal. 2015), but in that case the choice-of-law determination was made at the class certification stage, not the pleading stage, and *Yahoo* therefore supports Plaintiffs' argument that the inquiry is premature.

standing to sue in-state defendants under CIPA when the calls were routed to the defendant's California headquarters for analysis).

As such, Defendant's choice of law argument is premature and is best deferred to class certification, when the Court can confront the issues on a more developed record.

**5. Plaintiff Casner States A Claim Under WESCA**

Defendant next argues that Plaintiff "Casner's WESCA claim fails for the same reasons that the CIPA § 632(a) claim fails." MTD at 13. Specifically, Defendant argues that Plaintiff gave express consent for his calls to be recorded" because "Plaintiff alleges that he called DirecTV's customer service line" and "DirecTV consumers 'are told that their calls will be 'recorded for quality assurance.'" *Id.* (citations omitted). That is meritless.

The WESCA permits interception only "where **all** parties to the communication have given prior consent to such **interception**." 18 Pa. Cons. Stat. § 5704(4) (emphasis added). As above, Plaintiff expressly alleges that when Defendant used software to read the contents of Plaintiffs' and class members' communications with both DISH and DirecTV, record and transcribe their customer service calls, and batch the calls, based on their contents, into separate categories, *see* FAC ¶¶ 1, 5, 42-49, it did so without consent because neither Defendant nor DISH/DirecTV informed Plaintiffs or class members of the fact **that a third party, Invoca, was eavesdropping** on the call from the moment the call connected. *See id.* ¶¶ 3, 6-7, 11, 13, 16, 39, 50, 68-70. Thus, even if customers are informed of the bare fact that the call would be recorded, Plaintiffs allege there was no disclosure that the call would be *intercepted* by another entity beyond DirecTV, let alone that the intercepting third-party would be Invoca. Defendant does not dispute that these important disclosures were not made. *See* MTD at 12-13.

Further, Defendant has cited no case that stands for the proposition that Plaintiff Casner or similarly situated customers who give DirecTV permission to record their conversations impliedly consent to interceptions and use of their communications by third parties other than the intended recipient—in Plaintiff Casner's case, DirecTV. *See id.* That is likely because WESCA case law is to the contrary. *See, e.g.*, *Vonbergen v. Liberty Mut. Ins. Co.*, 705 F. Supp. 3d 440, 459-60 (E.D. Pa. 2023) (finding that although plaintiff "may have consented to Liberty Mutual recording her

personal information inputted into the website, she has plausibly alleged that she was not aware Liberty Mutual had procured an undisclosed third party to intercept that information too.").

In fact, another court in this District recently denied a motion to dismiss WESCA claims based on similar facts at issue here. *See Yockey v. Salesforce, Inc.*, 2024 WL 3875785, at *8-9 (N.D. Cal. Aug. 16, 2024) ("Here, there is no allegation that Rite Aid or Kaiser tells website users that Salesforce might record their communications. Salesforce's authority … is distinguishable from the instant case because while Plaintiffs may have been aware that the 'party receiving the message'—i.e., Rite Aid and Kaiser Permanente were receiving the communications in a 'recorded format'—they had not consented to an undisclosed third party intercepting the message. … The Court denies Salesforce's motion to dismiss Plaintiffs' WESCA claims because Plaintiffs have plausibly alleged that they did not consent to interceptions by an undisclosed third party."). Here, as in *Yockey*, there is no allegation that Invoca or DirecTV tells customers that Invoca might record their communications. Thus, the Court should deny Invoca's motion to dismiss Plaintiff Casner's WESCA claims because he has plausibly alleged that he did not consent to interceptions by an undisclosed third party. *See Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 129 (3d Cir. 2022) ("WESCA's plain language and statutory history, persuades us the Pennsylvania Supreme Court would rule that there is no sweeping direct-party exception to civil liability under the WESCA. Thus NaviStone and Harriet Carter cannot avoid liability merely by showing that Popa unknowingly communicated directly with NaviStone's servers.") (internal citation omitted).

Defendant also fails to establish any inference that consent was given *prior* to the start of Invoca's interception. *See* 18 Pa. Cons. Stat. § 5704(4) ("A person, to intercept a wire, electronic or oral communication, where all parties to the communication have given **<u>prior</u> consent** to such interception.") (emphasis added). Plaintiffs allege that Invoca's "Signal AI Studio '**<u>automatically</u>** <u>analyzes every call</u>…'" made by customers to DirecTV, DISH, and Invoca's other clients. FAC ¶ 35 (emphasis added). In other words, even if DirecTV's disclosure that the call would be recorded was sufficient to alert Plaintiff of Invoca's eavesdropping (it was not), the disclosure's untimeliness deprived Plaintiff of the ability to give any consent to the interception *prior* to its inception; by the

time the disclosure was delivered, recording had already begun. Thus, Plaintiff plausibly alleges WESCA violations.

### B. Defendant's Motion To Strike Or Dismiss Plaintiffs' Nationwide CIPA Claims Is Premature, And Otherwise Fails Because CIPA Applies To Individuals Outside California Where, As Here, Defendant Is A California Entity

#### 1. Defendant's Motion To Strike Plaintiffs' Nationwide CIPA Claims Is Premature

Defendant argues that "[c]hoice-of-law principles preclude Plaintiffs' nationwide CIPA claims." MTD at 13. However, as another court in this District recently acknowledged, this argument is "premature[ at the motion to dismiss stage], and better determined on class certification or summary judgment." *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1257 (N.D. Cal. 2024); *accord Meta Platforms*, 690 F. Supp. 3d at 1078-79 (rejecting argument that "CIPA does not apply 'extraterritorially,' because CIPA's intent is 'to protect the right of privacy of the people of this state[]'" as "premature" on a motion to dismiss); *see also Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 894 (N.D. Cal. 2022), *motion to certify appeal denied*, 2022 WL 2965399 (N.D. Cal. July 8, 2022) (deferring choice of law analyses until class certification, after discovery shed light on whether defendants' acts had a substantial nexus to California).

Indeed, while "[c]ourts have taken differing approaches to whether and under what conditions similar California statutes apply to residents of other states[,] … [n]otably, they have done so … <u>at class certification, not the pleadings stage</u>." *Kellman*, 599 F. Supp. 3d at 894 (internal citations omitted, emphasis added). This is because discovery is required to "shed light on whether the 'executive decision makers responsible for' these product decisions 'are located in California' and whether the 'processes used to intercept, scan, and store' data may be performed in California, both of which may impact the choice-of-law analysis." *Id.* (citation omitted).

Accordingly, Defendant's reliance on *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-94 (9th Cir. 2012), and *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 603-04 (N.D. Cal. 2015), in support of its choice-of-law challenge here is misplaced. *See* MTD at 13-14 (citing *Mazza* and *Yahoo*). As Defendant acknowledges, *Mazza* was decided "at the certification stage," *id.* at 14, and

the same is true of *Yahoo*. *See Yahoo*, 308 F.R.D. at 602 (considering choice-of-law issue at class certification). This Court should follow the lead of *FullStory*, *Meta Platforms*, and *Kellman*, and defer analysis of the choice-of-law issue until class certification. *See, e.g.*, *Kellman*, 599 F. Supp. 3d at 894 ("This issue will be addressed at class certification."); *Meta Platforms*, 690 F. Supp. 3d at 1079 ("I am not determining or foreclosing any choice-of-law issues. … I am denying the motion to dismiss the CIPA claim based on Meta's exterritoriality argument.").

**2. <u>Plaintiffs Plausibly Allege A Sufficient California Nexus To Sustain Their Nationwide CIPA Claims</u>**

Finally, Defendant acknowledges that "Courts have allowed non-California residents to bring CIPA claims when their communications were recorded or intercepted in California," but argues that "Plaintiffs must allege a sufficient connection between the alleged conduct and California." MTD at 15 (citations omitted) (collecting cases holding that CIPA claims applied to non-California residents). And, according to Defendant, Plaintiffs here do not satisfy this standard. *See id*. That is incorrect.

Even assuming the choice-of-law issue were ripe for determination absent any discovery at this early stage (it is not), Plaintiffs allegations plausibly establish that Defendant's unlawful conduct at issue, which affected consumers nationwide, originated from and took place in California, based on the location of Defendant's principal place of business and corporate headquarters in California. *See* FAC ¶ 18 ("Defendant Invoca, Inc. is a Delaware corporation with its principal place of business in San Francisco, California."); *id*. ¶ 72 ("Because Defendant is headquartered in California, a CIPA § 631 can be pursued by all individuals whose oral communications to DISH and DirecTV customer service agents have been intercepted and/or collected by Invoca nationwide, regardless of where the individual resides.") (citations omitted) (collecting cases); *accord id*. ¶ 82; *see also id*. ¶¶ 20-21.

In other words, Plaintiffs allege that California is Invoca's "nerve center," *i.e.*, the place from where Invoca's "officers direct, control, and coordinate the corporation's activities" at issue in this case, *Hertz Corp. v. Friend*, 559 U.S. 77, 78 (2010)—namely, Invoca's "develop[ment] and operat[ion of its] conversation intelligence software-as-a-service ('SaaS') that it sells to, and

partners with, third party businesses (such as DISH and DirecTV) …," FAC ¶ 1, as well as its interception of customers' calls with DISH and DirecTV, *id*. ¶ 31, and its analysis of customers' oral communications during those calls, *id*. ¶ 37, using such intelligence software. *See also Hertz*, 559 U.S. at 78 ("The phrase 'principal place of business' … refers to the place where a corporation's high level officers direct, control, and coordinate the corporation's activities, *i.e.*, its 'nerve center,' which will typically be found at its corporate headquarters."). These allegations create a sufficient nexus between Defendant's unlawful conduct and California to support nationwide application of CIPA. Indeed, as the court concluded in *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011), non-resident plaintiffs have standing to bring CIPA claims against California defendants where, as here, the intercepted communications were routed to the defendant's California headquarters for analysis. *See id*. at 1024, 1026. In so concluding, the *Valentine* court explained that:

> A legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-Californians to pursue claims against California residents. To conclude otherwise would mean the California Legislature intended to allow California residents to violate the CIPA … with impunity with respect to out-of-state individuals and entities, a result this Court declines to reach.

*Id*. at 1028; *see also id*. at 1026 (agreeing with plaintiffs "that they should be permitted to maintain their California statutory claims 'because the relevant conduct occurred in California' and because doing so will further California's interest in promoting a fraud-free business climate").

Likewise, numerous other California courts, including courts in this District, have found allegations of a similar nature to be sufficient to sustain extraterritorial application of CIPA and other California laws at the motion to dismiss stage. *See, e.g.*, *Meta Platforms*, 690 F. Supp. 3d at 1079 ("Meta contends the CIPA claim must be dismissed[ as to non-California residents]. I disagree[.] … [P]laintiffs have plausibly alleged that the conduct at issue, in terms of the design and marketing of the Pixel technology …, occurred in California."); *FullStory*, 712 F. Supp. 3d at 1257 ("Meta moves to dismiss the CIPA claim [as to non-California residents]. I addressed and rejected a similar argument in [*Meta Platforms* in part] because … plaintiffs there, like plaintiff

here, plausibly alleged that the conduct at issue, in terms of the design and marketing of the Meta Pixel technology …, occurred in California …. Meta provides no new justification to consider reaching a different conclusion here.") (citations omitted); *Carrese v. Yes Online Inc.*, 2016 WL 6069198, at *4 (C.D. Cal. Oct. 13, 2016) (permitting CIPA claims by "non-California residents … against a California defendant" where "'all of the communication at issue were recorded by Defendant in California'") (citation omitted); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016) (same); *see also Schmitt v. SN Servicing Corp.*, 2021 WL 3493754, at *3 (N.D. Cal. Aug. 9, 2021) (data breach allegations regarding defendant who operated out of California "sufficient to allow out-of-state plaintiffs to seek recovery under California law"); *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018), *certified question accepted sub nom. Oman v. Delta Air Lines*, 2018 WL 10809386 (Cal. July 11, 2018), *and certified question answered*, 9 Cal. 5th 762 (2020) ("If the conduct that 'creates liability' occurs in California, California law properly governs that conduct."). This Court should follow suit.

## IV. ARGUMENT

For the foregoing reasons, Plaintiffs respectfully request that the Court deny in full Defendant's motion to dismiss and Defendant's alternative motion to strike the nationwide class allegations. However, if the Court grants Defendant's motions in any respect, Plaintiff respectfully requests that the Court grant leave to amend. *See, e.g.*, *Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (holding lower court erred in denying leave to amend after dismissing first amended complaint); *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016) (reversing denial of leave to amend notwithstanding three prior amendments by the plaintiff).

Dated: January 9, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ *Julia K. Venditti*

Julia K. Venditti (State Bar No. 332688)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: jvenditti@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com

**GUCOVSCHI ROZENSHTEYN, PLLC**
Adrian Gucovschi*
630 Fifth Avenue, Suite 2000
New York, NY 10111
Telephone: (212) 884-4230
Email: adrian@gr-firm.com

**Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiffs and the Putative Class*