**BURSOR & FISHER, P.A.**
Julia K. Venditti (State Bar No. 332688)
1990 North California Boulevard, 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: jvenditti@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com

**GUCOVSCHI ROZENSHTEYN, PLLC**
Adrian Gucovschi*
630 Fifth Avenue, Suite 2000
New York, NY 10111
Telephone: (212) 884-4230
Email: adrian@gr-firm.com

**Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RUHSON BUSBY, JILL COHEN, and STEPHEN CASNER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INVOCA, INC.,<br><br>Defendant. | Case No. 3:24-cv-05542-JD<br><br>**PLAINTIFFS' CORRECTED OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. James Donato<br>Date: February 6, 2025<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor |

## TABLE OF CONTENTS

PAGE(S)


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. ARGUMENT ..... 3

A. Plaintiffs State A Claim Under CIPA And WESCA ..... 3

1. Plaintiffs State A Claim Under CIPA § 631 ..... 3

2. Plaintiffs State A Claim Pursuant To CIPA § 632(a) ..... 8

3. Plaintiffs State A Claim Pursuant To CIPA § 637.5 ..... 10

4. Choice Of Law Considerations Are Premature As To Plaintiff Casner's Claims ..... 11

5. Plaintiff Casner States A Claim Under WESCA ..... 12

B. Defendant's Motion To Strike Or Dismiss Plaintiffs' Nationwide CIPA Claims Is Premature, And Otherwise Fails Because CIPA Applies To Individuals Outside California Where, As Here, Defendant Is A California Entity ..... 14

1. Defendant's Motion To Strike Plaintiffs' Nationwide CIPA Claims Is Premature ..... 14

2. Plaintiffs Plausibly Allege A Sufficient California Nexus To Sustain Their Nationwide CIPA Claims ..... 14

IV. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Bias v. Wells Fargo & Co.*,
942 F. Supp. 2d 915 (N.D. Cal. 2013) ..... 12

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
2016 WL 3543699 (S.D. Cal. June 29, 2016) ..... 15

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ..... 4

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ..... 10

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ..... 10

*Carrese v. Yes Online Inc.*,
2016 WL 6069198 (C.D. Cal. Oct. 13, 2016) ..... 15

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ..... 14, 15

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ..... 11, 14, 15

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) ..... 5

*Gladstone v. Amazon Web Servs., Inc.*,
2024 WL 3276490 (W.D. Wash. July 2, 2024) ..... 7

*Heerde v. Learfield Commc'ns, LLC*,
2024 WL 3573874 (C.D. Cal. July 19, 2024) ..... 4

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010) ..... 15

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) ..... 12

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ..... 10

*Jackson v. LinkedIn Corp.*,
2024 WL 3823806 (N.D. Cal. Aug. 13, 2024) ..... 7

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 4, 6, 7

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) .......... 5

*Kellman v. Spokeo, Inc.*,
599 F. Supp. 3d 877 (N.D. Cal. 2022) .......... 14

*Louis v. Healthsource Glob. Staffing, Inc.*,
2022 WL 4866543 (N.D. Cal. Oct. 3, 2022) .......... 5

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) .......... 5

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) .......... 13

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) .......... 15

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... 7

*Tate v. Vitas Healthcare Corporation*,
2025 WL 50447 (E.D. Cal. Jan. 8, 2025) .......... 2, 6, 7, 9

*Valentine v. NebuAd, Inc.*,
804 F. Supp. 2d 1022 (N.D. Cal. 2011) .......... 11, 12

*Vonbergen v. Liberty Mut. Ins. Co.*,
705 F. Supp. 3d 440 (E.D. Pa. 2023) .......... 13

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 7

*Yockey v. Salesforce, Inc.*,
2024 WL 3875785 (N.D. Cal. Aug. 16, 2024) .......... 13

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 4, 5

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007) .......... 5

**STATUTES**

18 Pa. Cons. Stat. § 5701 .......... 1

18 Pa. Cons. Stat. § 5704(4) .......... 12, 13

Cal. Penal Code § 631 .......... passim

Cal. Penal Code § 632 .......... 1, 8, 12

Cal. Penal Code § 637.5 .......... 1, 10

Cal. Pub. Util. Code § 216.4 .......... 10

## STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L. R. 7-4(A)(3)

1. Whether Plaintiffs Ruhson Busby, Jill Cohen, and Stephen Casner (collectively, "Plaintiffs") state a claim under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 632.

2. Whether Plaintiffs state a claim under CIPA § 637.5.

3. Whether Plaintiff Casner states a claim under the Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18 Pa. Cons. Stat. §§ 5701, *et seq*.

4. Whether Plaintiffs allege a sufficient nexus between Invoca's conduct and California to support extraterritorial application of CIPA nationwide based on Invoca's development, operation, and use of its intelligence software to intercept and route Plaintiffs' and the class members' private communications to Invoca's corporate headquarters in California.

## I. INTRODUCTION

Plaintiffs hereby oppose Defendant's Motion to Dismiss First Amended Complaint (ECF No. 23) ("MTD"). Plaintiffs state a claim under CIPA § 631(a) and § 632 because Defendant—an unknown third party—intentionally, and without the consent of Plaintiffs and class members, intercepted sensitive and confidential communications between Plaintiffs and the class members (on one hand) and DISH and DirecTV (on the other) by eavesdropping on their customer service calls. Specifically, Defendant intercepted Plaintiffs' and class members' financial information and other forms of information required for identity verification, without Plaintiffs' consent, over which Plaintiffs maintained a reasonable expectation of privacy. Because Defendant received the above-referenced subscriber information from cable and satellite television corporations, Defendant violated CIPA § 637.5. For the same reasons, Defendant's conduct also violated Plaintiff Casner's rights under the WESCA, 18 Pa. Cons. Stat. §§ 5701, *et seq*.

Defendant contends Plaintiffs fail to state claims under CIPA and WESCA and seeks to dismiss Plaintiffs' nationwide CIPA claim on choice of law grounds. None of Defendant's arguments have merit, as Plaintiffs have plausibly stated their claims for the reasons set forth above and herein, and because choice of law considerations are premature and should be addressed at the class certification stage (and, in any event, Defendant's arguments are wrong). Indeed, many of

Defendant's arguments were just rejected in *Tate v. Vitas Healthcare Corp.*, 2025 WL 50447 (E.D. Cal. Jan. 8, 2025), a case alleging CIPA claims based on the same Invoca software at issue here. For the reasons set forth herein and in *Tate*, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss and motion to strike in full.

## II. STATEMENT OF FACTS

Invoca operates a conversation intelligence software-as-a-service ("SaaS") product that it sells to third party businesses, including cable and satellite providers such as DISH and DirecTV. FAC ¶ 1. When a customer places a call with the customer service agents of DISH and DirecTV, Invoca's software captures the caller's speech patterns, transcribes the conversation, and then uses artificial intelligence ("AI") to classify the call into one of several subcategories based on the content of the caller's inquiry. *Id.* ¶¶ 1, 33. To accomplish this, Invoca surreptitiously transmits the conversation to its own servers, and then presents the information back to its clients using tools such as dashboards, searchable transcripts, and reports. *Id.* ¶¶ 1, 33. In so doing, Invoca collects a trove of data from telephone conversations between businesses (here, DISH and DirecTV) and their consumers. *Id.* ¶ 4. Invoca's conversation intelligence software include: (1) Signal AI Studio; (2) Automated Quality Assurance; (3) Signal AI Discovery; (4) Call Recordings and Transcriptions; and (5) Conversational Interactive Voice Response ("IVR") (collectively, the "Services"). *Id.* ¶ 2. Each Service permits Invoca to eavesdrop, record, extract data from, and analyze conversations to which it is not a party. *Id.* ¶ 42; *see also id*. ¶¶ 35-40.

Invoca, through the Services, has the capability to use the contents of these conversations for its own purposes beyond simply furnishing recordings to its clients, such as DISH or DirecTV. *Id.* ¶ 43. In fact, Invoca admits that it *does* use the contents of the "phone numbers and recordings" to (i) "improve, operate, maintain, and, in some cases, market the Invoca Platform and our Services"; (ii) to "conduct internal research in order to enhance the Invoca Platform and Services"; and (iii) to "keep you up to date on the latest Invoca Platform and Services announcements, special offers, and other information." *Id.* ¶ 46; *see also id.* ¶¶ 47-48.

DISH and DirecTV employ Defendant's Services. *Id.* ¶ 2. In doing so, "DISH and DirecTV have aided, agreed with, employed, and/or permitted Invoca to monitor, read, record,

learn the contents of, or otherwise intercept the conversations of their current and prospective consumers without their consent." *Id.* ¶ 3. Every inbound call from consumers (such as Plaintiffs) to either DISH or DirecTV was surreptitiously transmitted to Invoca in real-time. *Id.* ¶ 1. This includes individuals who call DISH and DirecTV within the States of California and Pennsylvania to, among other things, retrieve information, schedule service appointments, make changes to subscriptions, and receive additional forms of customer support. *Id.* ¶ 3. Unbeknownst to callers, Invoca uses its Services to secretly eavesdrop on and record their conversations. *Id.* ¶ 4. Invoca is not a party to the conversations; instead, customers reasonably believe that the conversations are between them and the employees of DISH or DirecTV. *Id.* ¶ 4. Neither DISH, DirecTV, nor Invoca disclosed the presence of a third-party auditor, nor did they obtain consent prior to Invoca recording, accessing, reading, and learning the contents of their conversations. *Id.* ¶¶ 6-7.

Plaintiff Ruhson Busby is a California resident who called DISH's customer service line in or around July 2024. *Id.* ¶ 10. In placing the call, Plaintiff Busby reasonably expected that the conversation was only between himself and DISH and he was not made aware that his phone call was being surreptitiously transmitted to an unknown third party, Invoca. *Id.* Invoca, through the Services, eavesdropped on, recorded, transcribed, and analyzed Mr. Busby's entire conversation with DISH in real-time. *Id.* ¶ 11. Plaintiff Busby did not consent to a third-party analytics provider's eavesdropping, interception, and use of his communications with DISH, or for the contents of his communications to be used for *purposes other* than DISH's quality assurance and training purposes—such as, "Invoca's marketing analytics, AI development, and industry reports, amongst other uses." *Id.* Plaintiff Jill Cohen, also a California resident, makes similar allegations, except that she called DirecTV instead of DISH in or around July of 2024. *See id.* ¶¶ 12-13. Plaintiff Stephen Casner, a Pennsylvania resident, makes the same allegations regarding his call to DirecTV's customer service line on or around September 5, 2024. *See id.* ¶¶ 15-16.

## III. ARGUMENT

### A. Plaintiffs State A Claim Under CIPA And WESCA

#### 1. <u>Plaintiffs State A Claim Under CIPA § 631</u>

CIPA § 631 creates avenues for relief where a person: (1) "by means of any machine,

instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection ... with any telegraph or telephone wire, line, cable, or instrument"; (2) "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit"; and (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained[.]" *Heerde v. Learfield Commc'ns, LLC*, 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024) (quoting *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023)). Here, Plaintiffs plausibly state a claim under each of the above-mentioned prongs of CIPA.

As to the first prong, Plaintiffs plausibly allege that Defendant used its software Services as a "machine, instrument, contrivance" to "tap[], or makes an[] unauthorized connection" on the "telephone wire, line, cable, or instrument" that Plaintiffs and the class members used when they called DISH or DirectTV. FAC ¶¶ 1-5, 10-17, 64.[1]

As to the second prong, Plaintiffs plausibly allege that Defendant read the contents of their communications with both DISH and DirecTV because the Services functioned to record and transcribe the customer service calls, which Defendant's software then used to batch the calls, based on their contents, into separate categories through its proprietary AI. *Id.* ¶¶ 1, 5, 42-49. Furthermore, Plaintiffs allege, and Defendant does not dispute, that it willingly intercepted and read their communications. *Id.* ¶ 67. Finally, Plaintiffs sufficiently allege that Defendant performed these acts without adequate consent because neither Defendant, DISH, nor DirecTV informed Plaintiffs or the class members that an unaffiliated third-party analytics provider was redirecting their calls in real-time to its own servers. *Id.* ¶¶ 3, 6-7, 11, 13, 16, 39, 50, 68-70.

As to the third prong, Plaintiffs plausibly allege that Defendant used information obtained from contents of their communications with both DISH and DirecTV for numerous purposes, including analyzing the data and delivering it to its customers in the form of dashboards, reports,

[1] There is no "content" requirement under the first provision of CIPA § 631. *See, e.g.*, *Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (explaining the "content" requirement only applies to CIPA provisions that use this language); *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (same).

and raw data. *Id.* ¶¶ 1, 33, 41. In addition, Invoca used the data for its own marketing analytics, AI development, and industry reports, amongst other unauthorized uses. *Id.* ¶¶ 11, 13, 16.

In its motion to dismiss, Defendant improperly attempts to rewrite Plaintiffs' well-pled allegations to fit its own narrative. In so doing, it misstates the facts and law every step of the way. As a threshold matter, Defendant does not dispute that it willfully wiretapped the at-issue communications, nor does it argue that Plaintiffs consented to Defendant's reading of the contents of their communications. As such, Defendant has waived any arguments to the contrary. *See Louis v. Healthsource Glob. Staffing, Inc.*, 2022 WL 4866543, at *2 (N.D. Cal. Oct. 3, 2022) (Donato, J.) ("Paragraph 15 of the Court's Standing Order for Civil Cases expressly bars raising new arguments in a reply, to avoid sandbagging and other inequitable conduct.") (citing *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)).

Defendant's sole argument to dismiss Plaintiffs' CIPA § 631(a) claim is based on the flawed premise that "the complaint fails to allege that Invoca is a third party that makes independent use of recorded calls rather than an extension of DISH and DirecTV." MTD at 4. In other words, Invoca argues that it is entitled to the so-called party exception under CIPA. *See id.* at 4-5. Defendant's argument is wrong and is belied by the factual allegations in the FAC, which are entitled to the presumption of truth. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To start, numerous courts have held that determining whether an analytics provider like Defendant is a party to the communication or a third-party eavesdropper is a question of fact not suitable for determination on a motion to dismiss. *See Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *7 (S.D. Cal. Jan. 12, 2024) ("Whether FullStory acts akin to a tape recorder or whether its actions are closer to 'an eavesdropper standing outside the door' is a question of fact which is better answered after discovery into the session replay technical context of the case.").[2]

Setting aside Defendant's procedurally premature arguments, the FAC is replete with facts that plausibly establish that Invoca is a third-party eavesdropper. Specifically, Plaintiffs allege that

[2] *See also Yoon*, 549 F. Supp. 3d at 1081 ("The question thus becomes, in analogue terms: is Quantum Metric a tape recorder held by Lululemon, or is it an eavesdropper standing outside the door? This is a question of fact for a jury, best answered after discovery into the storage mechanics of Session Replay."); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 942 (S.D. Cal. 2024) (same).

Invoca: (1) records the calls between Plaintiffs and class members and DISH or DirecTV, transcribes them, and reads them to provide insights to DISH and DirecTV in the form of dashboards, searchable raw data, and reports (*see* FAC ¶¶ 1, 33, 35, 38, 39-40); (2) records the calls and reads the contents of the calls to place them into categories to discern the caller's intent, interest in a certain product or service, the outcome of the call, important words to infer general trends across the calls, and to gauge the performance of customer service agents (*see id.* ¶¶ 36, 37); and (3) intercepts the substance of the communication with the customer (or prospective customer) through its IVR service to route them to the correct agent or menu (*see id.* ¶ 41). Indeed, Invoca concedes that its software "begins recording as soon as [a] call connects — and stays on the call no matter where it's transferred to — to capture the complete caller experience, every time." *Id.* ¶ 39. In short, Invoca "uses the Services to eavesdrop upon, record, extract data from, and analyze a conversation to which it is not a party." *Id.* ¶ 42. Invoca intercepted Plaintiffs' communications with DISH and DirecTV in real time, as the call was occurring. *See id.* ¶¶ 11, 13, 16.

Further, it is irrelevant whether Invoca "makes independent use of recorded calls" between consumers and DISH or DirecTV. MTD at 4. Indeed, just yesterday, a court in the Eastern District rejected a substantially similar argument in another CIPA case concerning Invoca's same technology at issue here, and recognized that "Section 631(a)'s text … does not actually contain a use requirement." *Tate v. Vitas Healthcare Corporation*, 2025 WL 50447, at *4 (E.D. Cal. Jan. 8, 2025) (citing *Javier*, 649 F. Supp. 3d at 899-900). "**In other words, an entity can violate the statute by learning the contents of the message *or* by using information obtained from listening in on a conversation**." *Id*. (italics in original, bolding added for emphasis). The *Tate* court therefore found "it unnecessary to consider a third party's intention to collect or use data from a call" and held that "Obtaining that data while reserving the capability to utilize it makes a third party distinct from one of the parties to the call and may trigger a violation of section 631(a)." *Id*. Thus, Defendant's insistence that "the complaint fails to allege that Invoca … makes independent use of recorded calls," MTD at 4, is of no moment.

In any case, as Plaintiffs allege, Invoca uses the intercepted information for its own benefit, such as to further enhance its AI and other *proprietary* technology that is uses to render the

Services (*i.e.*, using the substance of the intercepted communications to make its product offerings better and more compelling to customers). *See* FAC ¶¶ 47-48. At the very least, because Invoca transmits the communications to its own servers, analyzes them, and exercises control over them, it has the capability to use the intercepted information for its own purposes. *See id.* ¶¶ 43, 49.[3]

Moreover, as the *Tate* court pointed out, "Invoca's Terms of Service expressly reserve the ability to use 'Client Data, as reasonably necessary for Invoca to provide and enhance its provision of services.'" *Tate*, 2025 WL 50447, at *5 (internal citation omitted); see also FAC ¶ 47 (quoting the "'Invoca Terms of Service'" in relevant part). "Under these Terms of Service, Invoca *may* use the data obtained from calls placed to VITAS to improve its own product and services. Invoca's software has already allegedly violated the caller's privacy; **whether Invoca actually uses the contents of the call for its own purposes is not legally relevant**.") (italics in original, bolding added for emphasis). "Accordingly, the [*Tate* c]ourt f[ound] that Invoca, via its software, is a third party, distinct from both Plaintiff [] and … VITAS, and that Invoca's ability to use the data obtained for its own purposes may be sufficient to trigger section 631(a) liability." *Id.* This Court should follow *Tate*'s lead.

As explained above, even if the Court were to require allegations of actual use of the data by Defendant beyond the provision of services to its clients, Plaintiff still states a claim because Defendant uses the intercepted data to "enhance its provision of Services." FAC ¶¶ 47-48. Defendant counters that the Terms of Service state that Invoca's clients own the data and grant Invoca a license to the same. MTD at 9. But that is not the point. The point is that Invoca retains a license to *use* the data to enhance the provision of its Services, which clearly shows that Invoca uses the data for its own purposes. Defendant editorializes the Terms of Service by arguing that "it

[3] *See also, e.g.*, *Jackson v. LinkedIn Corp.*, 2024 WL 3823806, at *5 (N.D. Cal. Aug. 13, 2024) (finding violation of CIPA § 631 where "LinkedIn received this sensitive data and read and used it for its own marketing services"); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972-73 (N.D. Cal. 2023) ("The Court agrees with the *Javier* court that … the third party's intentions with respect to the use of the collected information are irrelevant. Rather, the inquiry turns on the more granular question of whether the third party 'ha[s] the *capability* to use its record of the interaction for any other purpose.'") (emphasis in original, citation omitted); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1196 (N.D. Cal. 2024) (rejecting argument that Google was a mere "vendor" where Google read and used analytics data by using the data to power its algorithms, gaining detailed user information, and collecting and aggregating the data to present to its customers on a dashboard); *Gladstone v. Amazon Web Servs., Inc.*, 2024 WL 3276490, at *6 (W.D. Wash. July 2, 2024).

is clear that Invoca's limited license to a Client's Data is to provide and enhance the services to that customer, not for Invoca's own purposes" (MTD at 9), but that is not what the Terms of Service say. The Terms of Service clearly state that Invoca licenses "Client Data" to enhance the Services, without limitation to any specific customer. *See* Declaration of Tyler G. Newby in Support of Defendant's Motion to Dismiss First Amended Complaint, Ex. A (ECF No. 23-2) ("Client grants to Invoca, its Affiliates and applicable contractors a worldwide, non-exclusive, transferable, royalty free license to **use**, host, copy, transmit, distribute and display Client Data, as reasonably necessary for Invoca to provide and **enhance its provision of Services**.") (emphasis added). At best, the unsupported (and self-serving) assertions by counsel raise a question of fact that cannot be determined at the pleading stage. Therefore, Plaintiffs state a claim under CIPA § 631.

### 2. Plaintiffs State A Claim Pursuant To CIPA § 632(a)

Cal. Penal Code § 632(a) states, in pertinent part:

> (a) A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation ….

Further, Cal. Penal Code § 632(c) defines "confidential communication" as:

> any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

Plaintiffs state a claim under Cal. Penal Code § 632(a) because Defendant, without Plaintiffs' consent, eavesdropped on Plaintiffs' and class members' confidential phone communications with DISH or DirecTV, which included "discussions of financial information for payment processing[] and other forms of information required for the purpose of identity verification." FAC ¶ 80. The Invoca software (the Services) is an electronic recording device because it functions to electronically intercept and record Plaintiffs' interactions with DISH and

DirecTV. *See id.* ¶ 78. Plaintiffs had a reasonable expectation of privacy when communicating with DISH and DirecTV because they were communicating sensitive information including financial information and identity verification information on the calls, and because neither Defendant nor DISH nor DirecTV made Plaintiffs aware that Defendant was eavesdropping on the phone calls. *See id.* ¶¶ 6-7, 11, 13, 16, 81-82.

Defendant argues that "Plaintiffs fail to plead both absence of consent and that they had an expectation of privacy in their calls." MTD at 10. Both arguments are wrong. *First*, as to consent, in addition to explicitly pleading that they did not consent to the conduct at issue (*see* FAC ¶¶ 3, 6-7, 11, 13, 16, 50, 82), Plaintiffs also could not have possibly provided consent because any disclosures provided did not "'explicitly notify' [Plaintiffs] of the practice at issue," as is required for "consent to be actual." *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) (citation omitted). Here, DISH consumers are told that their calls will be "monitored and recorded for quality assurance or training purposes" and DirecTV consumers are told that calls will be "recorded for quality assurance." FAC ¶ 7. However, these representations do not "explicitly notify" Plaintiffs of the conduct at issue, namely that Invoca, a third party, is surreptitiously eavesdropping on the phone call and is accessing, reading, and learning the contents of Plaintiffs and consumers' communications with DISH and DirecTV. *In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013) ("Google points to its Terms of Service and Privacy Policies, to which all Gmail and Google Apps users agreed, to contend that these users explicitly consented to the interceptions at issue. The Court finds, however, that those policies did not explicitly notify Plaintiffs that Google would intercept users' emails for the purposes of creating user profiles or providing targeted advertising."); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("[A]ny consent with respect to the processing and sending of messages itself does not necessarily constitute consent to the specific practice alleged in this case—that is, the scanning of message content for use in targeted advertising."). Therefore, as the *Tate* court just acknowledged, Plaintiffs did not consent to Invoca's interception of their calls as a matter of law. *See Tate*, 2025 WL 50447, at *1 ("Neither VITAS nor Invoca obtain the consent of any caller to VITAS's call center …."); *id.* ("Defendant's Motion to Dismiss … is DENIED.").

### 3. **<u>Plaintiffs State A Claim Pursuant To CIPA § 637.5</u>**

Cal. Penal Code § 637.5 states, in pertinent part:

> (a) No person who owns, controls, operates, or manages a satellite or cable television corporation, or who leases channels on a satellite or cable system shall:
>
> (1) Use any electronic device to record, transmit, or observe any events or listen to, record, or monitor any conversations that take place inside a subscriber's residence, workplace, or place of business, without obtaining the express written consent of the subscriber. …
>
> (f) As used in this section:
>
> (1) "Cable television corporation" shall have the same meaning as that term is given by Section 216.4 of the Public Utilities Code.
>
> (2) "Individually identifiable information" means any information identifying an individual or the individual's use of any service provided by a satellite or cable system other than the mere fact that the individual is a satellite or cable television subscriber. "Individually identifiable information" shall not include anonymous, aggregate, or any other information that does not identify an individual subscriber of a video provider service. …
>
> (h) Any person receiving subscriber information from a satellite or cable television corporation shall be subject to the provisions of this section.

Here, Invoca is a "person receiving subscriber information from a satellite or cable television corporation" because by eavesdropping on the calls at issue, Invoca received subscriber information from DISH and DirecTV, both satellite or cable television corporations (*see* Cal. Penal Code § 637.5(f)(1), Cal. Pub. Util. Code § 216.4, and FAC ¶ 90), and therefore Invoca is subject to Cal. Penal Code § 637.5. Invoca's argument that "CIPA Section 637.5 does not apply to Invoca because the complaint does not allege that Invoca owns, controls, operates, or manages a satellite or cable company" is clearly incorrect because it disregards subsection (h).

Invoca further argues that "[t]he complaint also does not allege that Plaintiffs' calls were recorded while they were in their homes, workplaces, or places of businesses." MTD at 11. But Plaintiffs allege that "[a]t all relevant times, through its Services, Invoca received subscriber information from DISH and DirecTV—including Plaintiffs' subscriber information—by using Invoca's Services to listen to, record, or monitor conversations **<u>that took place inside a subscriber's residence, workplace, or place of business</u>** when consumers would call DISH and

DirecTV." FAC ¶ 93 (emphasis added). These allegations are further plausible given the nature of the conversations as customer service calls of the type recorded by Invoca, including those seeking "customer support" (FAC ¶ 3), are likely to take place in the home or workplace near the actual devices, and because Plaintiff alleges they made the calls from their home states. *See id.* ¶¶ 10-17.

Defendant further argues that "the complaint lacks any factual allegations to support Plaintiffs' claim that Invoca received their 'subscriber information.'" MTD at 11. Yet, Defendant acknowledges Plaintiffs' factual allegations that Invoca intercepted and received their subscriber information. *See* MTD at 11; FAC ¶ 93. Further, Plaintiffs allege that they divulged "discussions of financial information for payment processing, and other forms of information required for the purpose of identity verification." FAC ¶ 80. As such, Plaintiffs clearly divulged, and Defendant clearly intercepted, their subscriber information.

#### 4. **<u>Choice Of Law Considerations Are Premature As To Plaintiff Casner's Claims</u>**

Defendant argues that "Plaintiff Casner's CIPA claims also fail because he is a Pennsylvania citizen asserting both a Pennsylvania WESCA claim and a California CIPA claim as a purported member of a nationwide class based on the same alleged conduct." MTD at 11-12. However, choice of law considerations are premature at the pleading stage. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1079 (N.D. Cal. 2023) (rejecting as premature argument that CIPA claim should be dismissed because "none of the named plaintiffs are California residents").

As a threshold matter, there is no *per se* extraterritoriality bar against a non-citizen of California bringing a CIPA claim against a California entity like Defendant (FAC ¶ 18). *See Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) ("A legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-Californians to pursue claims against California residents. To conclude otherwise would mean the California Legislature intended to allow California residents to violate the CIPA … with impunity with respect to out-of-state individuals and entities, a result this Court declines to reach."); *Meta Platforms*, 690 F. Supp. 3d at 1079 ("I am denying the motion to dismiss the CIPA claim based on Meta's exterritoriality argument."). Further, the choice of law question is best

reserved for the class certification stage, where the issues will be ripe for review. *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 928 (N.D. Cal. 2013) ("[T]he Court finds that the choice of law determination in this case is better suited for the class certification stage because the record with respect to balancing the competing states' interests is not sufficiently developed."). Finally, "[c]ourts have declined to conduct such an analysis at the motion to dismiss stage where further development of the record is necessary to properly decide the choice-of-law question." *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1170 (N.D. Cal. 2019).

Here, Defendant, operating in California, very likely routed and analyzed Plaintiffs' and class members communications within California, facts that will ultimately effect the choice of law analysis. *See, e.g.*, *Valentine*, 804 F. Supp. 2d at 1024, 1026. As such, Defendant's choice of law argument is premature and is best deferred to class certification, when the Court can confront the issues on a more developed record.

**5. <u>Plaintiff Casner States A Claim Under WESCA</u>**

Defendant next argues that Plaintiff "Casner's WESCA claim fails for the same reasons that the CIPA § 632(a) claim fails." MTD at 13. Specifically, Defendant argues that Plaintiff gave express consent for his calls to be recorded" because "Plaintiff alleges that he called DirecTV's customer service line" and "DirecTV consumers 'are told that their calls will be 'recorded for quality assurance.'" *Id*. (citations omitted). That is meritless.

The WESCA permits interception only "where **<u>all</u>** parties to the communication have given prior consent to such interception." 18 Pa. Cons. Stat. § 5704(4) (emphasis added). As above, Plaintiff expressly alleges that when Defendant used software to read the contents of Plaintiffs' and class members' communications with both DISH and DirecTV, record and transcribe their customer service calls, and batch the calls, based on their contents, into separate categories, *see* FAC ¶¶ 1, 5, 42-49, it did so without consent because neither Defendant nor DISH/DirecTV informed Plaintiffs or class members of the fact that a third party, Invoca, was eavesdropping on the call from the moment the call connected. *See id.* ¶¶ 3, 6-7, 11, 13, 16, 39, 50, 68-70. Thus, even if customers are informed of the bare fact that the call would be recorded, Plaintiffs allege there was no disclosure that the call would be *intercepted* by another entity beyond DirecTV, let

alone that the intercepting third-party would be Invoca. Defendant does not dispute that these important disclosures were not made. *See* MTD at 12-13.

Further, Defendant has cited no case that stands for the proposition that Plaintiff Casner or similarly situated customers who give DirecTV permission to record their conversations impliedly consent to interceptions and use of their communications by third parties other than the intended recipient—in Plaintiff Casner's case, DirecTV. *See id*. That is likely because the weight of WESCA case law is to the contrary. *See, e.g.*, *Vonbergen v. Liberty Mut. Ins. Co.*, 705 F. Supp. 3d 440, 459-60 (E.D. Pa. 2023) ("Though [plaintiff] may have consented to Liberty Mutual recording her personal information inputted into the website, she has plausibly alleged that she was not aware Liberty Mutual had procured an undisclosed third party to intercept that information too."). In fact, another court in this District recently denied a motion to dismiss WESCA claims based on similar facts at issue here. *See Yockey v. Salesforce, Inc.*, 2024 WL 3875785, at *8-9 (N.D. Cal. Aug. 16, 2024) ("Here, there is no allegation that Rite Aid or Kaiser tells website users that Salesforce might record their communications. … [W]hile Plaintiffs may have been aware that the 'party receiving the message'—i.e., Rite Aid and Kaiser Permanente were receiving the communications in a 'recorded format'—they had not consented to an undisclosed third party intercepting the message."); *see also Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 129 (3d Cir. 2022). Here, as in *Vonbergen*, *Yockey*, and *Popa*, there is no allegation that Invoca or DirecTV tells customers that <u>*Invoca*</u> records their communications.

Defendant also fails to establish any inference that consent was given *prior* to the start of Invoca's interception. *See* 18 Pa. Cons. Stat. § 5704(4) (requiring that "all parties to the communication have given **prior consent** to … interception") (emphasis added). Plaintiffs allege that Invoca's "Signal AI Studio '**automatically** analyzes every call…'" made by customers to DirecTV, DISH, and Invoca's other clients. FAC ¶ 35 (emphasis added). In other words, even if DirecTV's disclosure that the call would be recorded was sufficient to alert Plaintiff of Invoca's eavesdropping (it was not), the disclosure's untimeliness deprived Plaintiff of the ability to give any consent to the interception *prior* to its inception; by the time the disclosure was delivered, recording had already begun. Thus, Plaintiff plausibly alleges WESCA violations.

**B. Defendant's Motion To Strike Or Dismiss Plaintiffs' Nationwide CIPA Claims Is Premature, And Otherwise Fails Because CIPA Applies To Individuals Outside California Where, As Here, Defendant Is A California Entity**

**1. <u>Defendant's Motion To Strike Plaintiffs' Nationwide CIPA Claims Is Premature</u>**

Defendant argues that "[c]hoice-of-law principles preclude Plaintiffs' nationwide CIPA claims." MTD at 13. However, as another court in this District recently acknowledged, this argument is "premature[ at the motion to dismiss stage], and better determined on class certification or summary judgment." *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1257 (N.D. Cal. 2024); *accord Meta Platforms*, 690 F. Supp. 3d at 1078-79 (rejecting argument that "CIPA does not apply 'extraterritorially,' because CIPA's intent is 'to protect the right of privacy of the people of this state[]'" as "premature" on a motion to dismiss). Indeed, while "[c]ourts have taken differing approaches to whether and under what conditions similar California statutes apply to residents of other states[,] … [n]otably, they have done so … <u>at class certification, not the pleadings stage</u>." *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 894 (N.D. Cal. 2022) (citations omitted, emphasis added). This is because discovery is required to "shed light on whether the 'executive decision makers responsible for' these product decisions 'are located in California' and whether the 'processes used to intercept, scan, and store' data may be performed in California, both of which may impact the choice-of-law analysis." *Id.* (citation omitted); *see also id.* ("This issue will be addressed at class certification."). Thus, this Court should follow the lead of *FullStory*, *Meta Platforms*, and *Kellman*, and defer analysis of the choice-of-law issue until class certification.

**2. <u>Plaintiffs Plausibly Allege A Sufficient California Nexus To Sustain Their Nationwide CIPA Claims</u>**

Finally, Defendant acknowledges that "Courts have allowed non-California residents to bring CIPA claims when their communications were recorded or intercepted in California," but argues that "Plaintiffs must allege a sufficient connection between the alleged conduct and California." MTD at 15 (citations omitted) (collecting cases). And, according to Defendant, Plaintiffs here do not satisfy this standard. *See id.* That is incorrect. Even assuming the choice-of-law issue were ripe at this early stage (it is not), Plaintiffs plausibly allege that Defendant's

unlawful conduct at issue, which affected consumers nationwide, originated from and took place in California, based on the location of Defendant's principal place of business and corporate headquarters in California. *See* FAC ¶¶ 18, 72, 82; *see also id.* ¶¶ 20-21.

In other words, Plaintiffs allege that California is Invoca's "nerve center," *i.e.*, the place from where Invoca's "officers direct, control, and coordinate the corporation's activities" at issue in this case, *Hertz Corp. v. Friend*, 559 U.S. 77, 78 (2010)—namely, Invoca's "develop[ment] and operat[ion of its] conversation intelligence software-as-a-service ('SaaS') that it sells to, and partners with, third party businesses (such as DISH and DirecTV) …," FAC ¶ 1, as well as its interception of customers' calls with DISH and DirecTV, *id*. ¶ 31, and its analysis of customers' oral communications during those calls, *id*. ¶ 37, using such intelligence software. *See Hertz*, 559 U.S. at 78 ("The phrase 'principal place of business' … refers to the place where a corporation's high level officers direct, control, and coordinate the corporation's activities, *i.e.*, its 'nerve center,' which will typically be found at its corporate headquarters."). These allegations create a sufficient nexus between Defendant's conduct and California to support nationwide application of CIPA.

Indeed, as the court concluded in *Valentine*, 804 F. Supp. 2d at 1028, non-resident plaintiffs have standing to bring CIPA claims against California defendants where, as here, the intercepted communications were routed to the defendant's California headquarters for analysis. *See id*. at 1024, 1026. Likewise, numerous other California courts have found allegations of a similar nature to be sufficient to sustain extraterritorial application of CIPA at the motion to dismiss stage. *See, e.g.*, *Meta Platforms*, 690 F. Supp. 3d at 1079; *FullStory*, 712 F. Supp. 3d at 1257; *Carrese v. Yes Online Inc.*, 2016 WL 6069198, at *4 (C.D. Cal. Oct. 13, 2016); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016). This Court should follow suit.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny in full Defendant's motion to dismiss and alternative motion to strike the nationwide class allegations. However, if the Court grants Defendant's motions in any respect, Plaintiff respectfully requests that the Court grant leave to amend. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017).

Dated: January 13, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ Julia K. Venditti

Julia K. Venditti (State Bar No. 332688)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: jvenditti@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com

**GUCOVSCHI ROZENSHTEYN, PLLC**
Adrian Gucovschi*
630 Fifth Avenue, Suite 2000
New York, NY 10111
Telephone: (212) 884-4230
Email: adrian@gr-firm.com

**Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiffs and the Putative Class*