TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
MARY GRIFFIN SIMS (CSB No. 324073)
mgriffin@fenwick.com
YVETTE CHEN (CSB No. 352696)
ychen@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Attorneys for Defendant
INVOCA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RUHSON BUSBY, JILL COHEN, and STEPHEN CASNER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

INVOCA, INC.,

Defendant.

Case No.: 4:24-cv-05542-JD

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date: March 13, 2025
Time: 10:00 a.m.
Dept: Courtroom 11, 19th Floor
Judge: Honorable James Donato

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Invoca Was Not A Third Party To Plaintiffs' Communications. ........ 2

B. Plaintiffs' Knowledge And Consent To The Recording Of Their Calls Is Fatal To Their Section 632(a) Claims. ........ 5

C. Plaintiff Casner's Knowledge And Consent To The Recording Of His Call Is Fatal To His WESCA Claim. ........ 7

D. Plaintiffs Do Not Allege Invoca Is A Satellite Or Cable TV Company Or That It Is Otherwise Subject To CIPA Section 637.5(A)(1). ........ 8

E. Choice Of Law Issues May Be Resolved At The Pleading Stage. ........ 9

F. The Court Should Dismiss The Non-California Residents' CIPA Claims Because They Do Not Allege A Sufficient California Nexus. ........ 10

CONCLUSION ........ 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) .......... 4

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 6

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023) .......... 4

*Commonwealth v. Byrd*,
661 Pa. 85 (2020) .......... 7, 8

*Cover v. Windsor Surry Co.*,
14-cv-05262-WHO, 2016 WL 520991 (N.D. Cal. Feb. 10, 2016) .......... 10

*Davison v. Kia Motors America, Inc.*,
No. 15-cv-0239-CJC, 2015 WL 3970502 (C.D. Cal. 2015) .......... 10

*Dunn v. United States*,
442 U.S. 100 (1979) .......... 3

*Erceg v. LendingClub Corp.*,
475 F. Supp. 3d 1071 (N.D. Cal. 2020) .......... 9

*Flanagan v. Flanagan*,
27 Cal. 4th 766, 41 P.3d 575 (2002) .......... 6

*Freedline v. O Organics*,
No. 19-cv-01945-JD, 2020 WL 6290352 (N.D. Cal. Oct. 27, 2020) .......... 9

*Frezza v. Google, Inc.*,
No. 5:12-cv-00237-RMW, 2013 WL 1736788 (N.D. Cal. 2013) .......... 10

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 4

*In re Google Inc.*,
No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .......... 5, 6

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) .......... 10

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) .......... 9

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .......... 6

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) .......... 3

FENWICK & WEST LLP
ATTORNEYS AT LAW

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009)........ 3

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022)........ 7

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) ........ 3

*Tate v. Vitas Healthcare Corp.*,
2025 WL 50447 (E.D. Cal. Jan. 8, 225)........ 4, 6

*Vonbergen v. Liberty Mut. Ins. Co.*,
705 F. Supp. 3d 440 (E.D. Pa. 2023) ........ 7

*Williams v. What If Holdings, LLC*,
No. 22-03780-WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)........ 5

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ........ 4

*Yockey v. Salesforce, Inc.*,
No. 22-cv-09067-JST, 2024 WL 3875785 (N.D. Cal. Aug. 16, 2024)........ 7

**STATUTES AND RULES**

Cal. Penal Code § 631 ........ 1, 2, 3, 4

Cal. Penal Code § 632........ 1, 5, 6, 9

Cal. Penal Code § 637.5........ 2, 8, 9

FENWICK & WEST LLP
ATTORNEYS AT LAW

## I. INTRODUCTION

To avoid dismissal of their amended complaint, Plaintiffs promote a flawed interpretation of Section 631 of California's Invasion of Privacy Act ("CIPA"), misconstrue Invoca's online terms of service, ignore their own clear consent to the recording of their calls to DISH Network and DirecTV, and attempt to apply a law to Invoca that, on its face, applies only to cable and satellite television companies. These efforts fail, and the Court should dismiss Plaintiffs' complaint with prejudice.

As Invoca's opening brief describes, courts within the Ninth Circuit are split on whether a plaintiff asserting a CIPA Section 631 claim must allege that a service provider such as Invoca, which provides recording software-as-a-service to its customers, uses the communications it records for its own purposes or merely has the "capability" to use those communications. Unsurprisingly, Plaintiffs argue that they need only allege that Invoca has the "capability" to use for its own purposes the customer service calls that it allegedly records for DISH and DirecTV. As Invoca explained in its opening brief, this interpretation leads to absurd results, rendering most, if not all, cloud-based communications service providers both criminally and civilly liable for CIPA violations. Moreover, the very language Plaintiffs rely on to show Invoca's "capability" merely reinforces that Invoca provides services only to its customers.

Next, Plaintiffs try to brush away the admitted fact that during each of their calls to DISH Network and DirecTV, they received an express notice that their calls would be recorded and continued with the calls nonetheless. Their reliance on cases involving more opaque consent language in online terms of service and privacy policies is misplaced and ignores cases holding that express statements that a phone call would be recorded is sufficient to establish consent to the recording. Next, their argument that consent was ineffective because the consent notice did not specify *who* was making the recording, invents a rule that does not exist. Unsurprisingly, Plaintiffs can point to no requirement that a notice of a recording must state who is making the recording under either California or Pennsylvania law. In all events, they cannot avoid dismissal of their CIPA Section 632 claim, which applies only to the recording of "confidential" communications, because the statute's text expressly states that communications that a party knows is being recorded are not "confidential."

Plaintiffs' interpretation of Section 637.5 also fails. The provision expressly prohibits only satellite and cable television companies from using electronic devices to record conversations in their subscribers' homes. Plaintiffs' argument that a subsection of the law stating that persons who "receive" subscriber information from cable and satellite television companies are "subject to the provisions of this section," prohibits Invoca from making a recording between the subscriber and the television company is circular and nonsensical. The only way that Invoca allegedly receives subscriber information is by making the recording in the first place.

Finally, Plaintiffs' argument that Invoca's motion to dismiss Plaintiff Casner's CIPA claim and strike Plaintiffs' CIPA nationwide class allegations are premature is wrong. Numerous courts, including this one, have properly addressed choice of law questions at the 12(b)(6) phase where no additional factual development is necessary.

For these reasons, Invoca requests that the Court dismiss the complaint with prejudice.

## II. ARGUMENT

### A. Invoca Was Not A Third Party To Plaintiffs' Communications.

Plaintiffs argue that it is "irrelevant whether Invoca makes independent use of recorded calls." Opposition to Motion to Dismiss (Opposition or "Opp."), ECF 28 at 6. Plaintiffs' argument relies on several courts' overbroad interpretation of CIPA Section 631 that, if followed, would make every communications service provider, including every cloud-based email, web hosting, and e-commerce service provider a criminal wiretapper. Courts in the Ninth Circuit are split on the appropriate test for determining whether providers of technology used by a party to record communications are merely extensions of the party to the communication or are instead third-party eavesdroppers. *See* Opp. at 5. Invoca submits that the correct interpretation of Section 631 looks to whether the complaint plausibly alleges that the service provider actually uses the communications for its own purposes. Mot. at 6 (citing cases).

Plaintiffs urge this Court to adopt a test that will hold any service provider liable if it has the "capability" to use recordings for its own purposes, regardless of whether it actually does so. Because CIPA is a criminal statute with a civil right of action, the "rule of lenity" requires the Court to resolve an ambiguity in statutory interpretation where two reasonable interpretations stand in

"relative equipoise" in Invoca's favor. *E.g.*, *Leocal v. Ashcroft*, 543 U.S. 1, 12 n.8 (2004); *accord LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009); *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202, (2021). The lenity rule "is rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited." *Dunn v. United States*, 442 U.S. 100, 112 (1979). Here, Plaintiffs' interpretation would lead to absurd results and would criminalize cloud computing services used to host personal and enterprise email and chat communications, websites, and e-commerce platforms. This Court should reject this test and join the multiple courts throughout this Circuit in finding that the relevant question is whether the software provider at issue used information collected for its own purposes. *See* Mot. at 5-6.

The complaint fails to allege facts that, if true, would state a CIPA Section 631(a) claim. Contrary to Plaintiffs' assertion that the "FAC is replete with facts that plausibly establish that Invoca is a third-party eavesdropper," (Opp. at 5), Plaintiffs' Opposition confirms that most of the allegations of the complaint allege that Invoca uses the recordings solely for the purpose of providing services to DISH and DirecTV and is therefore an extension of DISH and DirecTV. *See* Opp. at 5. For instance, the Opposition states that, Invoca "records the calls between Plaintiffs and class members and DISH or DirecTV, transcribes them, and reads them to *provide insights to DISH and DirecTV* in the form of dashboards, searchable raw data, and reports," and that Invoca intercepts calls "through its IVR service to route *them to the correct agent or menu*." *Id.* at 6 (emphasis added). Plaintiffs also argue that Invoca organizes "calls to place them into categories to discern the caller's intent, interest in a certain product . . . and to gauge the performance of customer service agents." *Id.* These are services for DirecTV and DISH, not Invoca's independent uses. The complaint does not allege any facts that create a plausible inference that DirecTV or DISH uses any Invoca services beyond call recording.

The Opposition repeats the complaint's misconstruction of a partial quote from Invoca's online terms of service as the only allegation that Invoca is "capable" of using Plaintiffs' call content for its own purposes. Specifically, Plaintiffs argue that the terms give Invoca a license to use "Client data, as reasonably necessary for Invoca to provide and enhance (i.e., 'improve') its

provision of services" which is misleading. *See* Opp. at 7 (citing Am. Compl. ¶ 47). Plaintiffs posit that their misconstrued language allows Invoca to use customers' data to improve Invoca's services. Not so. First, the terms of service state that they give Invoca a non-exclusive license to use "client data, as reasonably necessary for Invoca to provide and enhance its provision of Services." Newby Decl. Ex. A, ¶ d.a. The terms define Services as "the products and services purchased by the Client and provided by Invoca, as specified on an Order Form and as described in the Documentation." *Id.* ¶ a.j. With this complete context, it is clear that Invoca's limited license to use client data is to provide and enhance the services to that client, not for Invoca's own purposes. Moreover, the products and services are identified in a separate order form, which Plaintiff cannot plausibly allege includes services beyond call recording for DISH and DirecTV, respectively.

Plaintiffs also incorrectly rely on *Tate v. Vitas Healthcare Corp.*, 2025 WL 50447, at *4 (E.D. Cal. Jan. 8, 225) to argue that Invoca is a third-party eavesdropper. Opp. at 7. But like Plaintiffs' other authorities, *Tate*, applies the test that interprets Section 631 expansively and simply looks at whether a service provider has the capability to use customer data for any other purpose. Moreover, *Tate,* which was brought by the same Plaintiffs' counsel as in this case, unsurprisingly relies on similar language in the Invoca terms of service that was quoted out of context.

In an attempt to salvage their claims, Plaintiffs assert that the determination of whether Invoca is a third party or a party to the conversation is a question of fact not suitable for determination on a motion to dismiss. Not so. Courts routinely decide this issue at the motion to dismiss stage. *See, e.g., Yockey v. Salesforce*, *Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (granting motion to dismiss and finding there was no CIPA wiretapping where third-party communication software provider accessed and used the records for the purpose of furnishing service to party to the conversation); *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) (granting motion to dismiss CIPA Section 631(a) claim where the complaint failed to plead facts that service providers recorded "Defendant's customers' information for some use or potential future use beyond simply supplying this information back to Defendant"); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (similar); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021) (granting motion to dismiss and reasoning that "a vendor that

provides a [] service" allowing a website operator "to record and analyze its own data" is not a third-party wiretapper); *Williams v. What If Holdings, LLC*, No. 22-03780-WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (granting motion to dismiss finding that third-party website screen recording service was merely a tool used by the website operator to record its own communications with the plaintiff).

Plaintiffs' waiver argument also fails. Plaintiffs contend that Invoca "does not dispute that it willfully wiretapped the at-issue communications, nor does it argue that Plaintiffs consented to Defendant's reading of the contents of their communications." Opp. at 5. Invoca spends nearly half of its opening brief arguing that it did not wiretap Plaintiffs' conversations and did not use their communications for any purpose other than providing DISH and DirecTV a service. Mot. at 4-10. Moreover, it expressly argues that Plaintiffs consented to call recording, which Plaintiffs acknowledge in their complaint.

### B. Plaintiffs' Knowledge And Consent To The Recording Of Their Calls Is Fatal To Their Section 632(a) Claims.

Plaintiffs next argue that they did not consent to the recordings of their calls. Plaintiffs rely on inapposite cases involving opaque privacy policies and terms of service about email services to argue that the admitted disclosures of call recording during their calls with DISH and DirecTV do not establish consent. But the facts in Plaintiffs' cited cases are vastly different from this case. Unlike the vague language buried in privacy policies in the cases Plaintiffs rely on, here, they acknowledge that they were notified on each of their calls that the call would be recorded. Am. Compl. ¶ 7. In *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013), the consent language in Google's terms of service and privacy policy differed from its alleged conduct. Google's terms stated that for some of its services, it "may provide tools to filter out explicit sexual content." *Id.* Plaintiffs alleged that Google instead intercepted their emails to create targeted ads based on their content, which, Plaintiffs contended, the terms did not disclose. *Id*. And when the terms did mention targeted advertising, Google only disclosed that it *may* target advertising based on information "stored on" its services or based on "queries made through" its services, not that it would intercept emails as they were sent or received for building advertising

FENWICK & WEST LLP
ATTORNEYS AT LAW

profiles. *Id.* (emphasis added). Here, Plaintiffs were expressly informed that their calls would be recorded as they were being recorded.

Plaintiffs' reliance on *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014), is also misplaced. Plaintiffs cite language from the court's analysis of the defendant's argument that users gave *implied* consent to the interception of their instant messages. That analysis does not apply here, given that Plaintiffs expressly consented to the recording of their calls. And like *In re Google*, in *Campbell*, the court found that Facebook's disclosure that it "*may* use the information we received about you. . . for data analysis" was insufficient to find that the plaintiffs consented to their scanning of their private messages for targeted advertising. *Id.* at 847 (emphasis added). Here, Plaintiffs were expressly told that their calls would be recorded, not simply that they might be. *Tate* is also factually distinguishable. Unlike here, the plaintiff in *Tate* did not even allege that she received a recording prompt that the Plaintiffs in this case received. Newby Decl. ISO Reply Ex. A.[1]

Regardless of the scope of consent, the plain language of Section 632(a) establishes that a conversation is not confidential when a party to that conversation knows it is being recorded. *See* Cal. Penal Code, Section 632 (c) (defining "confidential communication" to "exclude[] a communication . . . in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77, 41 P.3d 575 (2002) ("[A] conversation is confidential under Section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded."). Plaintiffs concede that they were aware that their calls were being recorded. The complaint and the Opposition both concede this point. *See* Opp. at 9 ("DISH consumers are told that their calls will be 'monitored and recorded for quality assurance or training purposes' and DirecTV consumers are told that calls will be 'recorded for quality assurance.'"); Am. Compl. ¶ 7. These allegations plead Plaintiffs out of a Section 632(a) claim, and that claim should be dismissed with prejudice.

---

[1] The Court may take judicial notice of public records and publicly filed complaints in other cases. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

### C. Plaintiff Casner's Knowledge And Consent To The Recording Of His Call Is Fatal To His WESCA Claim.

Plaintiff Casner argues that he did not consent to the recording of his calls because the notice of recording did not disclose who would be doing the recording. Opp. at 12-13. There is no requirement under the Wiretapping and Electronic Surveillance Control Act of Pennsylvania ("WESCA") that a notice of recording must identify the party that is making the recording to establish consent. The law requires only that the parties be informed that the call is being recorded, which Plaintiff concedes was done here.

The cases cited by Plaintiff are inapplicable, as none concerned calls in which the plaintiff received a notice of recording. *Vonbergen v. Liberty Mut. Ins. Co.*, 705 F. Supp. 3d 440 (E.D. Pa. 2023), which Plaintiff relies on to argue that identification of the recorder is necessary to establish consent, concerned allegations that a website recorded visitors' interactions with the site. The *Vonbergen* plaintiff alleged that the website gave no warning at all that visitors' interactions with the site would be recorded. *Id.* But here, Plaintiff Casner concedes he received a just-in-time disclosure that his calls would be recorded. Moreover, *Vonbergen* distinguished the facts of that case from *Commonwealth v. Byrd*, 661 Pa. 85 (2020), a call recording case that is factually similar to this case. In *Byrd*, a jailhouse telephone system expressly alerted a detained defendant that his call with a visitor may be monitored or recorded. *Id.* at 85. The Pennsylvania Supreme Court found that the defendant and visitor mutually consented to the interception and recording of their communication by proceeding to speak after these warnings. *Id.* at 93. The court explained that courts are to consider "the objective knowledge of a reasonably intelligent person following the warning that the call 'may be monitored or recorded.' After receiving such warning, proceeding to speak into the receiver is consent by conduct and therefore, the recording of such interceptions is not unlawful." *Byrd*, 661 Pa. at 99. Plaintiff Casner's participation in the call after receiving the disclosure of recording established consent. Plaintiff's other cases are all factually distinguishable for the same reasons that *Vonbergen* is distinguishable. *Yockey v. Salesforce, Inc.*, No. 22-cv-09067-JST, 2024 WL 3875785, at *8-9 (N.D. Cal. Aug. 16, 2024); *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 129 (3d Cir. 2022).

FENWICK & WEST LLP
ATTORNEYS AT LAW

Plaintiff incorrectly argues that "[d]efendant also fails to establish any inference that consent was given *prior* to the start of Invoca's interception." Opp at 13. But Plaintiff does not allege that the disclosure was given after he began speaking, and it is common sense that a notice of recording would not be given at the end of a call. As in *Byrd,* Plaintiff Casner concedes that he received the warning that his call would be recorded and continued to engage in the conversation with DirecTV. Am. Compl. ¶¶ 7, 15. Plaintiff Casner consented to the recording of his call, and his WESCA claim should be dismissed with prejudice.

### D. Plaintiffs Do Not Allege Invoca Is A Satellite Or Cable TV Company Or That It Is Otherwise Subject To CIPA Section 637.5(A)(1).

Plaintiffs' Opposition makes clear that they base their CIPA Section 637.5 claim on a single, vague provision of the statute that states "[a]ny person receiving subscriber information from a satellite or cable television corporation shall be subject to the provisions of this section." Cal. Penal Code § 637.5(h). Plaintiffs attempt to use this this sentence to bootstrap a claim against Invoca under Section 637.5(a)(1), which provides:

> No person who owns, controls, operates, or manages a satellite or cable television corporation, or who leases channels on a satellite or cable system shall: (1) Use any electronic device to record, transmit, or observe any events or listen to, record, or monitor any conversations that take place inside a subscriber's residence, workplace, or place of business, without obtaining the express written consent of the subscriber.

This argument fails for at least two reasons.

First, the Complaint nowhere alleges that DirecTV or DISH divulges subscriber information to Invoca. At most, the complaint alleges that Invoca records statements made by *Plaintiffs* about their accounts. Second, interpreting Section 637.5(h) to prohibit recording is nonsensical within the structure of Section 637.5. Section 637.5(a)(1) prohibits the owner or operator of a satellite or cable company from using electronic devices—most logically the devices that subscribers use to access cable and satellite programming—to record communications within a subscriber's home or residence without an express, written agreement. Interpreting Section 637.5(h) to prohibit Invoca from recording a conversation within a subscriber's home, when the only way Invoca becomes a "person receiving subscriber information" is by recording a call between the subscriber and the

provider is circular. And in any event, CIPA already contains a prohibition on recording a conversation without consent, which is found in Section 632.

A better reading of Section 637.5(h) is that the other subsections of 637.5 are applicable to third-party service providers, like Invoca, service technicians, and outsourced customer support companies. Those subsections prohibit disclosing identifiable subscriber information to third parties (§ 637.5(a)(2)); mandate retention periods about viewing history (§ 637.5(b)); imposing restrictions on when subscriber information can be disclosed to the government (§ 637.5(c)); and setting a time frame for providing information gathered by a provider about a subscriber in response to the subscriber's request (§ 637.5(d)).

**E. Choice Of Law Issues May Be Resolved At The Pleading Stage.**

Plaintiff Casner concedes that he cannot assert a violation of two state wiretap laws based on the same conduct. Mot. at 12. Nor does he dispute that case law establishes that, "when faced with two recording laws, a court applies the law of the state where the aggrieved party whose privacy rights were invaded was located when recorded, not the law of the state where the recording party was located." Mot. at 12 (*citing Erceg v. LendingClub Corp.*, 475 F. Supp. 3d 1071, 1078 (N.D. Cal. 2020*); see also In re Yahoo Mail Litig.*, 308 F.R.D. 577, 605-06 (N.D. Cal. 2015)). Similarly, Plaintiffs do not dispute the merits of Invoca's choice of law arguments or application of the three-step governmental interest test. Plaintiffs also do not dispute that there are material differences between CIPA and other states' wiretapping law such as the amount of damages and remedies allowed. Nor do Plaintiffs dispute that every state has an interest in applying their own laws and that other states' interests would be impaired by applying California law to non-California class members. *See generally* Opp. at 11, 14.

Rather, Plaintiffs incorrectly argue that Invoca's choice of law arguments are premature at the motion to dismiss stage. While that may be correct in some cases, it is not here. As this Court recognized in another case brought by Plaintiffs' counsel, "a Rule 12(b)(6) motion may also be appropriate for evaluating the adequacy of a national state-law class allegation." *Freedline v. O Organics*, No. 19-cv-01945-JD, 2020 WL 6290352, at *1 (N.D. Cal. Oct. 27, 2020). The Court applied a choice of law analysis and dismissed the plaintiff's nationwide claims. *Id*. at *3.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Indeed, other courts in the Ninth Circuit routinely apply a choice of law analysis at the motion to dismiss stage when the facts to be developed through discovery will not change the analysis. *See e.g., Cover v. Windsor Surry Co.*, 14-cv-05262-WHO, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016) (holding that it is not appropriate to delay the choice of law issue until class certification where further development of the factual record is not reasonably likely to materially impact the choice of law determination); *Davison v. Kia Motors America, Inc.*, No. 15-cv-0239-CJC (RNBx), 2015 WL 3970502, at *2, n.3 (C.D. Cal. 2015) (noting that many courts have decided against deferring choice of law decisions until discovery or class certification when the material differences are sufficiently obvious from the pleadings); *Frezza v. Google, Inc.*, No. 5:12-cv-00237-RMW, 2013 WL 1736788, at *6 (N.D. Cal. 2013) ("the principle articulated in *Mazza* applies generally and is instructive even when addressing a motion to dismiss.").

Plaintiffs have advanced no basis to delay determination of choice of law questions to the class certification stage. They have alleged that a plaintiff outside of California had his call recorded. The law is clear that Pennsylvania law governs that claim, regardless of where the recording took place. For the reasons stated in Invoca's opening brief, the Court should strike Plaintiffs' nationwide class claims.

### F. The Court Should Dismiss The Non-California Residents' CIPA Claims Because They Do Not Allege A Sufficient California Nexus.

Contrary to Plaintiffs' assertion, the complaint does not sufficiently allege that the alleged conduct "originated from and took place in California." Opp at 14-15. Plaintiffs' reliance on Invoca being headquartered in California is insufficient to establish the required nexus. *See In re Graphics Processing Units Antitrust Litig.,* 527 F. Supp. 2d 1011, 1028 (N.D. Cal. 2007) (striking California law nationwide class against California-headquartered defendant where the complaint did not allege that the conduct giving rise to the litigation took place in California). Here, the complaint is devoid of any allegations about the location of the alleged interception or recording.

## CONCLUSION

For the foregoing reasons, Invoca respectfully requests that the Court dismiss the amended complaint with prejudice.

Dated: January 27, 2025

FENWICK & WEST LLP

By: */s/ Tyler G. Newby*
Tyler G. Newby

Attorneys for Defendant, Invoca, Inc.

FENWICK & WEST LLP
ATTORNEYS AT LAW